## NESTOR C. TEVIS et al. v. JEREMIAH H. TEVIS et al., Appellants.

### Division One, June 2, 1914.

1. **EQUITY: Instructions: Point No Point.** Instructions and demurrers to evidence in a case of equitable cognizance fill no useful office and "point no point." Even in a law suit tried to the court without a jury on facts constituting an agreed case, instructions are out 'of place. Though instructions requested are ignored by the chancellor, exceptions challenging the decree in equity as not doing equity and as contrary to

the evidence entitle appellants to a hearing *de novo* on the merits on appeal.

2. ————: **Suit to Interpret Will and Declare Title.** A suit to construe a will, and to ascertain and determine the title to land devised thereby, and to vest it in plaintiff according to a right created by the will to elect to take the land upon the payment of a named sum of money, is a suit of equitable cognizance.

3. **WILL: Right to Purchase: Tender Before Suit.** Where the will gave to a certain devisee the right to purchase the land upon the payment of a named sum of money, and he in his petition, asking that the title be vested in him, avers that he notified the defendants of his election to purchase and offered to pay them the money, and their answer contains a general denial and averments repudiating his interpretation of the will, a technical tender is not of substance; and the record showing that the money was tendered and paid into court at the trial, the question of tender becomes immaterial, and a decree for plaintiff will not be reversed simply because no formal proof was made of tender before the suit was brought. Equity does not require the doing of a useless and vain thing.

4. ————: **Right to Elect: Residuary Clause: Property Not Specifically Devised.** Where the will gave to plaintiff an undivided half interest in certain land, and the use of the other half upon condition that he pay to another son an annuity for his life, and gave him the right upon that son's death to purchase the remaining half upon the payment of a named sum of money, and then charged his four other children with certain advancements and directed that each of said four children "be first made equal out of my estate, and after this is done I direct that all of my property, real, personal and mixed, except that heretofore specifically devised, be equally divided between" said four children, and there was other real estate and personal property which was used to equalize those four, the said four children did not share in the tract of land first "specifically devised" to plaintiff, but said residuary clause itself excepted said undivided half interest from the devise made by it.

5. ————: ————: ————: ————: **Repugnancies.** Plain provisions of a will will not be destroyed by subtle refinements breeding repugnancies and uncertainties when by disregarding them a consistent whole may be evolved.

6. ————: **Heirs at Law.** Heirs at law are those who after their ancestor's death intestate have a statutory right to in-

herit all lands, tenements and hereditaments which belonged to him or of which he was seized at the time of his death.

7. ———: **Option to Purchase: Residuary Clause: Right to Share in Purchase Money.** The will gave to Nestor, a son, the use of certain land and charged it with the payment of an annuity to testator's son John during his life, and then provided that upon John's death Nestor should have "the right to purchase" the land upon the payment of a named sum, "which sum, or in case said Nestor shall elect not to purchase the land then said land, shall vest in the bodily heirs of John, and if there shall be no heirs of his body then living the money or the land shall pass to and vest in my heirs at law." John died without leaving bodily heirs. The will then charged four other children with certain advancements, and directed that they be made equal, "and after this is done I direct all my property, real, personal and mixed, except that heretofore specifically devised, be divided equally between" said four children. *Held*, that Nestor, being an "heir at law" of testator, and having elected to purchase the land, shared equally with the other four children in the purchase money, notwithstanding the said residuary clause and the use of the word "purchase."

8. ———: **Purchasing from One's Self.** Strictly speaking one cannot purchase from himself; and it may be that where the will gives to a named son "the right to purchase" certain land upon the payment of a named sum of money and he exercises that right, an intention may be gathered from the whole will that he was to pay that sum to the other heirs, though it does not specifically so state. But where the plan of the will is not built around that idea, but it indicates that in case of purchase the money was to go to testator's "heirs at law," of whom he was one, the holding will be that there was an abatement of his share of the named sum to be paid.

9. ———: **Contingent Remainder.** The will gave to testator's son Nestor use of the land for life, charged with an annuity in favor of John, and then provided: "Upon the death of my son John, my son Nestor shall have the right to purchase said land for $2400, which sum of money, or in case said Nestor shall elect not to purchase the land, then said land, shall vest in the heirs of the body of said John, and if there shall be no heirs of his body then living, the money or the land shall pass to and vest in my heirs at law." *Held, first,* that Nestor had the right to pay the $2400 and take the land regardless of whether John left living heirs of his body or not; *second,* if John left living bodily heirs at the time appointed for Nestor to take, to-wit, at John's death, then such bodily heirs took either the money or land, as the case might

be; *third*, on the contingency that there were no bodily heirs of John him surviving, the testator's heirs at law took the land, if the option was not exercised, and the money if it was; and, *fourth*, John having died without living bodily heirs, the will of John's sister, who died prior to his death, devised no interest either in the land or money, since it could not be determined until John's death what persons would take. The chance of John's brothers and sisters having any interest in either land or money depended altogether on John's death without living bodily heirs, and that fact could not be ascertained until his death.

10. ———: ———: **Deed of Remainderman.** A deed made by the devisee of a will who had only a contingent remainder in the land which never vested during the testator's lifetime, fails as a grant.

Appeal from Cooper Circuit Court.—*Hon. John M. Williams*, Judge.

REVERSED AND REMANDED (*with directions*).

*H. C. Wallace* for appellants.

(1) The evidence fails to show that a tender of the sum of twenty-four hundred dollars, or any other amount, was made to these defendants before the filing of plaintiff's petition, or prior to the trial of the case, although it is alleged in the petition the sum of $2400 was offered to defendants. On the contrary, the record only shows that plaintiff deposited such sum with the clerk of the circuit court after the evidence in the case was heard. "If there is anything, such as making of payments, necessary to be done in order to make his cause of action complete, such thing must be done, before suit is commenced, for, if it is done afterwards, even before the trial, it is then too late and of no avail so far as the then proceeding is concerned." Lawler v. Vette, 166 Mo. App. 352; Heard v. Ritchey, 112 Mo. 516; Turk v. Stall, 53 Mo. 437. (2) Under the law and the evidence in this case plaintiff was not entitled to recover. Item third of the will provides that

after the payment of certain amounts to make his children equal, all of his property, real, personal and mixed, except that hereinbefore specifically devised, shall be divided equally between the said Daniel, Emma, Jeremiah and Anna. There is no specific bequest of the land described in plaintiff's petition to the plaintiff. In item two of said will testator bequeaths to plaintiff the undivided one-half interest in the land mentioned in plaintiff's petition, with a proviso or option in the plaintiff at the death of John, to purchase the remaining undivided one-half interest for the sum of $2400. These appellants contend that this is not a specific bequest of the remaining undivided one-half interest in said land, and that the residuary clause bequeathing all the property of testator not hereinbefore specifically devised to these four children, must prevail over the provision of item second of said will, and that these appellants are the owners of such undivided one-half interest in said land. That the clause in item second of said will giving the respondent the right to purchase such undivided interest in said land for the sum of $2400 is in conflict with the residuary clause in item third of said will and therefore inoperative and void. The purchase of the undivided one-half interest in the land being merely optional with respondent, and the $2400 not being the property of testator at the time of his death, there was neither a specific bequest of the money nor of such undivided interest in the land described in the second item of said testator's will. There is no particular estate created of such undivided interest in said second item of said will, nor is the same devised to any particular person. 18 Am. & Eng. Ency. Law (2 Ed.), pp. 714, 715, 722; Waters v. Hatch, 181 Mo. 288. The invalid portion of a will may be rejected. Sevier v. Woodson, 205 Mo. 202; Wells v. Fuchs, 226 Mo. 97. The residuary clause carries a lapsed or void legacy. Givens v. Otte, 222 Mo. 415; Mueller v. Buenger, 184 Mo.

478. (3) If item two can stand and be held not to be inoperative or in conflict with the residuary clause in the third item, it created a contingent remainder in the undivided one-half interest in the land described in said second item, the other half interest being devised to Nestor. Under this clause of the will it could not be determined until the death of John what persons were to take this undivided half interest. The undivided half interest was, first, to vest in the heirs of the body of John Tevis, should any be living at the time of his death, "and if there be no heirs of his body then living, the money or the undivided interest in the land shall pass to and vest in my heirs at law." The time for this undivided interest in the land to vest was at the death of John Tevis; the persons in whom it was to vest could not be ascertained until the death of John Tevis. Dickerson v. Dickerson, 211 Mo. 490; Rodney v. Landau, 104 Mo. 257; Emmerson v. Hughes, 110 Mo. 630; Buxton v. Kroeger, 219 Mo. 241; Waddell v. Waddell, 99 Mo. 338; Emmerson v. Whittlesey, 55 Mo. 258; Delassus v. Gatewood, 71 Mo. 371; Sullivan v. Garasche, 229 Mo. 496. (4) If the money can be substituted for the land, then the remainder in said sum of $2400 was contingent. The remainder in the land or money under the provisions of second item being contingent and not having vested during the lifetime of Anna McRosky, she had no interest in this property, at the time of her death, by virtue of the will, and hence her will did not pass any title to the land or money involved in this suit. Her husband, defendant Bledsoe McRosky, acquired no interest in the property in controversy by the will of his deceased wife. Sullivan v. Garasche, 229 Mo. 496; Dickerson v. Dickerson, 211 Mo. 483; Buxton v. Kroeger, 219 Mo. 224; Goodman v. Simons, 113 Mo. 132; Taylor v. Adams, 93 Mo. App. 277. (5) The intention of testator was that his son Nestor should pay to the persons to whom entitled at the death of

John Tevis, the full sum of twenty-four hundred dollars. Testator did not intend that the respondent should pay the sum of $2400 for such undivided interest in the land, and at the same time receive a part thereof himself. Such a construction of the will would conflict with the third item of such will, wherein it is provided that all property, not thereinbefore specifically devised, 'be divided equally between the said Daniel, Emma, Jeremiah, and Anna. There being no specific devise of said sum of $2400, it not 'being the property of testator at the time of his death, the residuary clause in the third item of said will controls the disposition of such sum of money.

*John Cosgrove* and *W. M. Williams* for respondent.

(1) A tender was not a condition precedent to the suit. The plaintiff was not required to determine at his peril how the money should be divided; further, a party is never bound to do a useless thing, and it is apparent that a tender in accordance with the finding of the court and the contention of the plaintiff would not have been accepted. However, the answer does not set up the want of a demand for the deed or the absence of a tender, and the point cannot be made for the first time in this court, even if it was a case requiring a tender to create the cause of the action, which it is not. Deichmann v. Deichmann, 49 Mo. 107; R. S. 1909, sec. 2283; Harrison v. Lakenan, 189 Mo. 581. (2) There is no conflict between the third paragraph, containing the residuary clause, and paragraph two of the will, disposing of the land in controversy. 1 Underhill on Wills, 567. It is immaterial to discuss or determine whether the disposition of the land under the second paragraph is technically a specific devise or legacy. The intention of the testator must govern, and it is plain that he intended by the third clause to give to the four children therein named only the

property not otherwise disposed of in the second item of his will. His will is the law of his property "and the true intent and meaning of the testator must govern." R. S. 1909, sec. 583. (3) The testator devised the undivided half of the land involved here, upon the death of John Tevis without heirs of his body, to the heirs at law of the said testator. The plaintiff Nestor was one of these heirs, and if he had not elected to take the land for $2400, would undoubtedly have been entitled to an undivided one-fifth of the real estate. The $2400 under the will was fixed as the value of the entire half interest and in the event of an election to purchase for that sum, took the place of the land and belonged to the same persons to whom the land was devised. The plaintiff was one of the children and heirs at law of his father and entitled to his share in the land or the money which takes its place, and the trial court did not err in so holding. (4) The "heirs at law" of Simeon P. Tevis were the persons answering that description at the time of his death. It is immaterial that the enjoyment of the estate was contingent upon the death of John without heirs of his body. The property, in that event, was given to the heirs at law of the testator—not to those who might have been his heirs if he had died at the same time as his son John, who was to enjoy the rents of the land during his life. Rozier v. Graham, 146 Mo. 360; Stokes v. Van Wyck, 3 S. E. (Va.), 387; Kellett v. Shepard, 28 N. E. (Ill.) 751; In re Tucker's Est., 21 Atl. (Vt.) 272; Johnson v. Weber, 33 Atl. (Conn.) 506; Abbott v. Bradstreet, 85 Mass. 587; Bunton v. Speck, 21 Pac. (Kan.) 288.

LAMM, J.—Equity. This is a suit by Nestor C. Tevis to divest title to certain land out of defendants on the payment of purchase money in accordance with a will and to vest title in plaintiff, and for distribution of that money. From a decree granting the relief

prayed in plaintiff's bill, defendants (barring Bledsoe McRosky who rested content) appealed.

Pending that appeal plaintiff died, and on apt steps the cause stands revived in the names of his administrator, Robert S. Tevis, and his heirs, Julia A., Lillie M., Simon P., and said Robert S. Tevis. Those names are read into the caption as respondents, but for convenience we speak of the original plaintiff as respondent.

It is conceded the proper parties are before the court, hence their several relationships to each other and several interests in the subject-matter (all set forth in the pleadings on both sides) are unimportant.

In small compass, the case is this:

In 1893 one Simeon P. Tevis died in Cooper county seized of the land in question situate in that county, and leaving a will. As the case turns on that will, attend to it:

"I, Simeon P. Tevis, of the county of Cooper in the State of Missouri, hereby revoking all former wills and codicils by me made, do make, publish and declare my last will and testament in manner following, that is to say:

"Item First. I direct that all my just debts and funeral expenses be paid by my executor as soon after my death as the same can be legally done.

"Item Second. I give and devise unto my son Nestor C. Tevis, an undivided one-half of the following described real estate situate in Cooper county, Missouri: The west half of the southwest quarter and the west half of the east half of the southwest quarter of section twenty-three, and the west half of the northwest quarter and the northeast quarter of the northwest quarter of section twenty-six, all in township forty-seven, of range seventeen, my said son Nestor C. Tevis to have the same absolutely.

"It is further my will and I hereby direct that my said son Nestor C. Tevis, his heirs or assigns, shall have

the use of the remaining undivided half during the lifetime of my son John Tevis, and my said son Nestor C. Tevis, his heirs or the persons holding under him shall pay annually beginning at the expiration of one year from my death the sum of two hundred and eighty-eight dollars to my said son John Tevis, and I hereby charge the said annual payments as a lien upon said lands. These payments shall be continued during the lifetime of my son John Tevis. Upon the death of my son John Tevis, my son Nestor C. Tevis, or his heirs, shall have the right to purchase said undivided half of the aforesaid land for the sum of twenty-four hundred dollars, which sum of money, or in case said Nestor C. Tevis, or his heirs, shall elect not to purchase the land, then said undivided half interest shall vest in the heirs of the body of said John Tevis, and if there shall be no heirs of his body then living, the money or the undivided interest in the land shall pass to and vest in my heirs at law.

"Item Third. I charge my other children with the following advancements, that is to say: Daniel Tevis, eight hundred and fifty dollars; Anna McRosky, fifteen hundred and fifty dollars, and in this sum is included one thousand dollars which I have this day sent her; and my grandchild, Emma Hubbard, for advancements to her and her mother, five hundred and fifty dollars. I hereby direct that each of the four persons last named be first made equal out of my estate, paying to Daniel, Emma Hubbard, and Jeremiah respectively a sufficient amount to make them equal with the amount advanced to Anna McRosky, and after this is done I direct that all of my peroperty, real, personal and mixed, except that hereinbefore specifically devised, be divided equally between the said Daniel Tevis, Emma Hubbard, Jeremiah Tevis and Anna McRosky.

"Item Fourth. I hereby nominate and appoint my friend Charles T. Leonard executor of this my last

will and testament, and I hereby authorize my said executor to sell and convey any and all of my real estate and to dispose of the proceeds as hereinbefore directed.

"In witness whereof I have hereto set my hand this 8th day of January, 1891."

Plaintiff is testator's son, the Nestor C. mentioned in item two of the will as devisee of a one-half interest in the land described in that item. The other half is the subject-matter of this suit.

Testator's son, John, mentioned in that item, died in 1910, unmarried and without heirs of his body surviving him, having received each year from plaintiff the annuity of $288 charged in his favor upon that land by the will.

On John's death, Nestor C. (having had the use of the land during John's lifetime as directed by the will) invoked the right created by the will to have the one-half interest so used by (but not devised to) him at and for the will-fixed sum of $2400. Having so elected to purchase, plaintiff brought the instant suit to divest title out of defendants and vest title to the said undivided one-half interest in him, bringing the money into court for distribution; and, *inter alia*, alleging that under the terms of the will he was entitled to share with the other heirs, devisees, etc., in that money.

The petition counting, as it does, on item two of the will and compliance with its terms, whereby plaintiff alleges an election to purchase, a right to share in the purchase money and to have title vested out of defendants and into him, its averments are sufficient to have granted the relief prayed for, if a sound interpretation of the will permit it, hence a reproduction of the entire petition is unnecessary to an understanding of the case.

The answer of defendant McRosky is not abstracted. The answer of the appealing defendants, after making certain admissions and denials, sets

forth the entire will and by averment puts a construction on it *contra* to that of the petition, to-wit, that the provision of item two, beginning with the words "upon the death of my son John Tevis" and ending with the words "vest in my heirs at law," the last words of the item (quoting) "is vague, uncertain, ambiguous and indefinite, so that the remaining undivided one-half of said land is not specifically devised, nor is there any certain or specific gift of the said sum of twenty-four hundred dollars, or any certain devisee or legatee, and there is no specific gift of either the said sum of twenty-four hundred dollars, or the undivided half of said land, or any certain devisee, and the said clause is in conflict with the residuary clause in the third item of said will, and is therefore void and of no effect."

The answer then continues as follows: "That in the third item of said will said testator, after charging some advancements, made a residuary clause as follows: 'and after this is done I direct that all of my property, real, personal and mixed, except that specifically devised, be divided equally between the said Daniel Tevis, Emma Hubbard, Jeremiah Tevis and Anna McRosky,' and in the fourth item of said will testator empowers and authorizes his executor to sell all of his real estate, by the following clause, *viz.*: 'and I hereby authorize my said executor to sell and convey any and all of my real estate and to dispose of the proceeds as hereinbefore directed.'

"Wherefore, these defendants state that by the terms and provisions of said will the undivided one-half of said land described in plaintiff's petition not specifically devised to said Nestor C. Tevis, by the terms of said will, vested in the said Daniel Tevis, Emma Hubbard, Jeremiah Tevis and Anna McRosky on the death of said testator."

It is next averred in the answer that Mrs. McRosky died testate, her will devising all her property to

defendant, Bledsoe McRosky. That subsequently
Bledsoe sold and conveyed his interest in the Simeon
P. Tevis estate to defendant Jeremiah Tevis, making
the. defendants (excepting Bledsoe) the owners of the
individual one-half interest not specifically devised to
Nestor C. Tevis, and then concludes as follows:

"Wherefore these defendants pray for an order,
judgment and decree of this court for the determination
of the validity of the items of said will hereinbefore
mentioned and if for any reason the same or any part
thereof ·be invalid or inoperative, that said portion of
said will be so held, adjudged and decreed, and that
the legal effect of such invalidity on the remaining
portion of said will be declared, that the invalid portion
of said will be declared void, and that said will be
·construed, and for a decree adjudging the rights of
plaintiff and these defendants in and to said real estate
therein described, and in said plaintiff's petition de-
scribed, and that the title to said undivided half of
said real estate not so specifically devised to Nestor
C. Tevis be vested in these defendants, and for such
other and further orders, judgments and decrees
touching the premises as to equity and justice may
seem meet and proper."

At the trial it stood conceded there was real estate
belonging to testator not described in the second item
of his will, which sold for, say, $3600; that the personal
estate of testator amounted to, say, $3900; and that
out of the proceeds of said last-mentioned realty and
said personalty Daniel and Jeremiah Tevis and Emma
Hubbard were equalized with Anna McRosky as
required by item three of the will.

The court, taking plaintiff's construction of the
will, decreed title to the land described in item two
into him, and then went on and divided the $2400
deposited by him as purchase money into five parts,
distributing it as follows: $480 to plaintiff; $480 to
Jeremiah Tevis; $480 to Emma Hubbard; $480 to

Bledsoe McRoskey (his wife, devisee Anna McRosky, having died childless and testate after testator's death, making Bledsoe her sole devisee and legatee) and $240 each to Irving Tevis and Anna M. Williams (said Irving and Anna M. being the only heirs of devisee Daniel Tevis, who died after testator and before suit).

The facts are undisputed. The controversy, as said, is over the interpretation of the will. The material assignments of error will sufficiently appear in the course of the opinion.

I. *Of instructions and a demurrer to the evidence.*

The cause is of equitable cognizance in fact and *eo nomine*; for the petition seeks equitable relief, so does the answer. In this condition of things appellants complain here of the chancellor's refusal of a demurrer to the evidence at the close of the whole case, as well as of his refusal of four prayers in the form of declarations of law. Their learned counsel industriously (but with labor lost) briefs assignments of error predicated on such rulings. We need not reproduce the instructions; for we need not consider them or the demurrer. Not only are instructions out of a place in a law suit tried to the court without a jury on facts constituting an agreed case, as here (Eckle v: Ryland, 256 Mo. 424), but it is venerable and acceptable doctrine, well grounded in reason, that instructions and demurrers to evidence fill no useful office at all in equity. Those devices for administering justice, when useful, are singular to law, not equity. [Troll v. Spencer, 238 Mo. l. c. 92.] A judge of this bench invented the phrase, "point no point." If that striking phrase is entitled to live in judicial language, then assignments of error on the giving or refusing of instructions in equity may be assigned to that head.

Fortunately for appellants they did not rest alone on error in instructions, but took exceptions below

and bring them here challenging the decree in that it
did not do equity and was contrary to the evidence.
Those exceptions are efficacious, entitling appellants
to a hearing *de novo* on appeal and seeking the merits.

II. *Of a tender.*

Appellants complained of no "tender" before
bringing suit. The complaint is without substance,
because: The contention gathers head from the sup-
posed failure of proof. The petition alleges that plain-
tiff elected to take the undivided half of the land in
accordance with the right and the privilege conferred
upon him by the terms of the will "and so notified the
defendants and offered to pay them said money, but
that defendants refused to accept the same or to
convey said land to the plaintiff." The answer con-
tained no admission of a tender, and in that particular
rests on a general denial; but (and this is close home)
it made averments in the nature of a repudiation of
plaintiff's interpretation of the will. [Deichmann v.
Deichmann, 49 Mo. 107.] Their interpretation, then
and now, was so radically different from plaintiff's
that a technical tender was not worth while. [*Vide*,
Deichmann case.] The maxim is: Equity requires no
vain and useless thing to be done. It looks to sub-
stance, not form. So, the question of tender or no
tender was not raised below and the absence of one
was not a trial theory. At the trial the following
record was made without objection or exception—
appellants standing mute: "Judge Williams: We now
want the record to show that plaintiff now offers to
pay in court and does pay in court, subject to its order,
the $2400 tendered in the petition. The money was
then deposited in the court subject to the order of this
court." In the face of such pleadings, such record,
and such deposit, the question of tender is immaterial.

To send this case back for proof of a formal tender before bringing suit, would merely prolong the litigation and be an unavailing act sounding to folly.

The point is disallowed to appellants.

III.   *Did the court interpret the will correctly and make a proper disposition of the purchase money?*

The subject-matter under this head is approached in briefs from different angles.   We will not follow the classification of appellants' counsel, but will  dispose of questions determinative of the case from our own viewpoint.

(1)   In the first place, all sides agree there is a residuary clause in the will (item three), and that four named persons, to-wit, a granddaughter, Emma Hubbard, and three children of testator, to-wit, Daniel and Jeremiah Tevis, and Anna McRosky, are the beneficiaries of (i. e., the residuary legatees or devisees under) this clause.   The main question then is, What property passes by this residuary clause?   It is argued on behalf of appellants that the one-half interest in the 240 acres of land mentioned in item two, not devised absolutely to Nestor C., belongs in the residuary clause, and therefore plaintiff is not entitled to any share in that undivided interest nor has he the right to elect to take the same.   That conclusion hinges on the theory that the half interest is not "specifically devised," hence it falls into the residuary estate.   But we are not persuaded to that view of it.   The statutory rule is that courts and others concerned in the execution of last wills shall have due regard to the direction of the will and the true intent and meaning of the testator in the matter brought before them.   [R. S. 1909, sec. 583.]   That statute was but declarative of a settled judicial rule for construing wills.   The intent of testator is arrived at by taking all the provisions of his will together.   His words are to be taken in their

ordinary meaning and in the sense indicated by the body of the instrument. The provisions of the will are to be so construed together that all may be operative and none of them perish unless they contravene some settled principle of law.

Giving heed to those guiding principles, we see that in the residuary clause is a provision that after Anna, Daniel, Emma and Jeremiah are equalized in advancements, then "all of my property, real, personal and mixed, except that *hereinbefore specifically devised*" he divided equally between the four. The record shows a considerable estate in lands and personal property not specifically devised, hence the residuary clause is made operative without putting a strained construction on other provisions. It shows, too, that the four named devisees were equalized in advancements and shared in the residuary estate, hence they took benefits under it.

Now, item two of the will carved out of the general estate 240 acres and disposed of the *whole* tract; one-half interest was devised absolutely to Nestor C. The same item makes specific provisions disposing of the other half interest. For instance, it directs to whom it should go and under what circumstances and contingencies. Is all that not *specifying?* And when a testator has specified his disposition of a given part of his estate has he not "specifically devised" it? We have no doubt of testator's intention and that is as far as we need go, but we should go that far. He intended to make a specified disposition of the whole 240 acres and as it is the only specific devise prior to the residuary clause, when he used the words "specifically devised" he referred to that land and the whole of it.

Take another view: To say that this testator in his plain and simple will did not except that one-half interest in the 240 acres by the phrase "except that hereinbefore specifically devised" and hold it out of

the residuary clause, is to bring about a contradiction and a destructive repugnancy in the provisions of his will. On the other hand, excluding that half interest from the residuary clause violates no technical rule known to us and such construction (and this alone) makes item two of the will effective and the whole will operative. The other construction creates such a repugnancy as destroys the plan of the will and makes the provisions of item two perish. It is an unwholesome doctrine in construing wills to first unnecessarily breed repugnancies and uncertainties by subtle and speculative refinements and then when so bred to destroy a plain and perfectly proper provision by means of such uncertainties and repugnancies. We rule there are no such contradictions, repugnancies or uncertainties as make invalid any provisions of item two of the will.

(2) Aside from the contention just disposed of it is not contended there is anything unjust in fact or irregular in law in the right given Nestor C. to take the other half interest on the payment of $2400, or that such provision cannot be specifically enforced, but if we so interpret the words "specifically devised" as to exclude that half interest from the residuary clause, and make the provisions of item two effective in the matter of a right to elect to take it at the named price, then, and in that event, it is argued that the purchase money goes into the residuary estate. We do not agree to that view of it. In interpreting a will, before the court says anything it should see what testator himself has said. Speaking broadly, the bounden duty of the court is to say the same thing testator has said unless his language creates a situation obnoxious to some rule of law. Take this case: After providing that Nestor C. should have the use of the half interest on condition he pay an annuity of $288 to his brother John during his life (which he faithfully did), the will takes up the question of the disposition of that half interest on John's death. The plan of testator was to

give a valuable right of election to Nestor C. to take it for $2400. As we have already ruled, that right of election is clear and free from all ambiguity. It contravenes no property rule. But there was a contingency in testator's mind, to-wit, that Nestor C. might not want to exercise the right of election. What was to be done on that contingency? Look to the will. In that event that half interest went to the heirs of the body of said John Tevis. At that point another contingency sprang in testator's mind, namely, John Tevis might have no heirs of his body then living. What then was to be done? Again, look to the will. The admonitory cry: "the will, the will . . . read the will," accords with both law and drama. At that point testator proceeded to dispose of the money to be paid by Nestor C. on exercising his election to take the land, on the one hand, and also proceeded to dispose of the undivided interest in the land on the contingency the right of election was not exercised by Nestor C., and on the contingency there were no heirs of the body of John Tevis then living, the will reading: "The money or the undivided interest in the land shall pass to and vest in my heirs at law." There is no ambiguity or irregularity about that. The only question is: Who were his "heirs at law?" Heirs at law are those who after their ancestor's death intestate have a right to inherit all lands, tenements and hereditaments which belonged to him or of which he was seized. [Bl. L. Dict. (2 Ed.), tit., "heirs at law"; Rosier v. Graham, 146 Mo. l. c. 360.] If one finds those persons on whom the law casts the inheritance on their ancestor's death (if there were no will) then one has found the *heirs at law* of such ancestor. The use of both terms, "heirs of the body" and "heirs at law" are not without significance in showing a use of accurate terminology in the will. In this case, Nestor C. Tevis falls within the class "heirs at law." It happens in this case that the residuary legatees also fill the description of that

class.  It follows that the two together constitute
the heirs at law, who in a certain contingency, to-wit,
the existence of no heirs of John Tevis' body, took the
land or the money.  Observe, in the scheme of the will
the money stood for the land and went to the same
class, to-wit, "my heirs at law."  This is so, not-
withstanding that in one place the will uses the term
"purchase."  Strictly speaking one cannot buy from
himself and in that sense there might be room for the
speculation that testator intended the $2400 to be paid
for the purchase from the *other* heirs at law.  But that
is not the plan of the will.  It does not build itself up
around the one narrow concept of "purchase."  The
will says nothing about purchase from the other heirs
at that price.  *Contra*, the price is for the land—all
there is of it.  It is equivalent to an appraised value
for the whole title and testator evidences his in-
tent by distinctly providing in the next breath that the
money or the land should go to his heirs at law.  In one
view of it and allowing full scope to the idea of *purchase*,
there would be an abatement to the amount of Nestor
C. Tevis's share of the appraised value and that would
give the same result in specific performance as allowing
him to share in the total price as the will does.

In dismissing the point, take a supposed case:
Suppose, as put by respondent's counsel, Nestor C.
had *not* elected to take the land at the appraised price,
what would become of it?  Under the will would he
not inherit his share in that land as an heir at law?
Clearly so.  In that view of it the conclusion is irresist-
ible that, as the money is in the same boat with the
land and subject to the selfsame directions in the will,
it goes precisely as the land would have gone.

We are of opinion that plaintiff shares in the
money.  Accordingly we so hold and rule the point
against appellants.

(3)  The next and final question is: Did the
chancellor make a correct distribution of the $2400?

Appellants contend he did not. The point involved is exceedingly nice and seeks more of the record. Anna McRosky as said, died in April, 1899, testate, without children surviving, making her husband Bledsoe, sole beneficiary under her will. Now, John Tevis died after his sister Anna McRosky, to-wit, on the 7th day of May, 1910. Assuming for the purposes of the point, that the money does not pass under the residuary clause (as we have just held), but passes under item two of the will (as also held), then the question springs: Did Anna McRosky take a vested interest which she could devise, or only a contingent interest, to-wit, the chance of having a share on the happening of the contingency that John Tevis died without heirs of his body? Testator held in his mind the contingency that John might have heirs of his body and the converse, to-wit, that he might not. For the purposes of jurisprudence the proposition may be allowed as sound on such a record as this, that while there is life left to a man there is hope—of heirs. Accordingly, the event could not be determined until John's death. With the premises in mind, let us again look to the will, reading: "Upon the death of my son John Tevis my son Nestor C. Tevis, or his heirs, shall have the right to purchase said undivided half of the aforesaid land for the sum of $2400, which sum of money, or in case said Nestor C. Tevis, or his heirs, shall elect not to purchase the land, then said undivided half shall vest in the heirs of the body of said John Tevis, and if there shall be no heirs of his body then living, the money, or the undivided interest in the land, shall pass to and vest in my heirs at law." An analysis of this controlling provision of the will establishes several propositions, thus: The first proposition is that Nestor C. Tevis had the right to pay his money and take title regardless of whether John left living heirs of his body or not. The next proposition is that if John left living heirs of his body at the time appointed

for Nestor to take, to-wit, at John's death, then such heirs of his body took either the money or the land, as the case might be.   The next proposition is that on the contingency there were no heirs of John's body (and only on that contingency) the heirs at law took under the will.   We can make nothing out it except that the heirs at law had the mere chance of having on the happening of the mentioned contingency.   The persons who were to take on that contingency could not be determined until John's death without heirs of his body. Such interest was therefore a contingent interest and not devisable prior to the death of John, and we so hold. , We have been so lately over this question in Eckle v. Ryland, supra, *q. v.*, that extended or further exposition would be unprofitable.

It follows that Anna McRosky having died prior to the event determining the takers and leaving no children surviving her, she took nothing; hence Bledsoe, her husband, took nothing under her will.   *Ergo*, it was error to make him a distributee as the chancellor did.

Bledsoe McRosky conveyed on the 26th day of June, 1902, a certain interest in described portions of the estate of Simeon P. Tevis to Jeremiah Tevis, one of defendants.   Questions are raised about the scope and effect of this conveyance.   Those questions are not reached; this, because Bledsoe held under the will of his wife Anna and, since her will was inoperative, his deed to Jeremiah fails as a grant.

The premises all in mind, the conclusion must be that the decree is wrong in its distribution.   Accordingly it is reversed and the cause is remanded because of error in the order of distribution.   The chancellor is directed to divide the money deposited in court into four parts instead of five, giving one-fourth to Jeremiah, one-fourth to the granddaughter, Emma Hubbard, one-fourth to the heirs of Nestor C. Tevis (who are respondents here under the order of revivor) and one-

fourth to the heirs and widow of Daniel Tevis, deccased, who are parties defendant. And otherwise make his decree conform to this opinion. It is so ordered. All concur.