VIRGINIA L. GARDNER, Administratrix, With the Will Annexed of the Estate of FRANK HAMMOND RIXEY, Appellant, v. JAMES M. VANLANDINGHAM, BELLE SLAUGHTER, IDA BARNES and JOE T. DOHERTY, Executor Under the Will and Testament of Lovie Vanlandingham and MARY W. VANLANDINGHAM, Appellant.—69 S. W. (2d) 947.

Division One, March 14, 1934.

*Elmer E. Hall* for Virginia L. Gardner, Administratrix; *Franken & Timmons* for Mary W. Vanlandingham.

*Lawson & Hale* for respondents.

HYDE, C.—This is an action for the construction of a will and for partition of the residuary estate disposed of thereby. The case was tried by the court, without a jury, upon an agreed statement of facts. John A. Vanlandingham (hereinafter called the testator) made the will in question on November 22, 1919. By this will the testator left to his wife absolutely $2500 in cash and his residence in Plattsburg. The remainder of his estate he disposed of as follows:

"FOURTH. I direct that my wife, Lovie Vanlandingham, shall have the use and benefit of all the rest, residue and remainder of my estate real, personal and mixed, wherever situated during the period of her natural life and at her death I direct that residue of my estate be divided equally among my heirs. In the event of the death of any of my heirs, then the share they would have received if living shall descend to their issue."

The testator was seventy years of age at the time he made this will. He and his wife had then been married more than forty years and had no children. The will was prepared by his banker, who was not a lawyer. The testator then had two living brothers and two living sisters; all were married, but only two had children. His brother James had four living children and his sister Belle had two living children. The testator also had a nephew, Frank Rixey, married at that time but without children who was the only child of the testator's deceased sister Lucy. The testator died April 19, 1922. None of his relatives above-named had died, nor had any other children, between the time the will was made and his death. The testator's widow, who was also the executrix of his will, died January 4, 1931.

The residuary estate of the testator consisted of notes, stocks and bonds, of the total value of $28,305.93, all of which was delivered to the testator's widow. She used the income therefrom during the remainder of her life and all of it was in her possession when she died. Defendant Joe T. Doherty was appointed executor of her estate. He had looked after the collection of the income from this property during her lifetime and as her executor he retained possession of it. Prior to the death of the widow, the testator's brother, Frank T. Vanlandingham, died, February 1, 1927, intestate, leaving no children. His widow, Mary W. Vanlandingham, was made a defendant but, by her answer, she contended for the same construction of the will as did plaintiff, and claimed a one-tenth interest in the

property (one-half of his one-fifth part). She was administratrix of the estate of her husband, and had made final settlement during the year 1928. Thereafter, also prior to the death of the testator's widow, his nephew Frank Rixey died, September 28, 1930. He left no children, but disposed of his estate by will. Plaintiff is his administratrix, with the will annexed, and, as such, makes claim for a total of nine-fortieths of the whole fund, one-fifth under the will of the testator and one-fortieth from the share of Frank T. Vanlandingham (one-fourth of one-half of his one-fifth share).

Prior to this suit, defendants James M. Vanlandingham, Belle Slaughter and Ida Barnes obtained an order of the probate court, without notice to plaintiff or Mary W. Vanlandingham, requiring Joe T. Doherty, as executor of the estate of the testator's widow, to deliver to them the entire estate disposed of by the fourth paragraph of the testator's will. Pursuant to this order, Doherty did deliver to them all of the notes, stocks and bonds composing the estate, and these three defendants have ever since had possession thereof and collected and used the income therefrom. Plaintiffs' petition stated that this property was in danger of being lost or dissipated and asked that a receiver be appointed to take possession thereof and collect the income therefrom until the proper distribution thereof could be determined. This controversy, therefore, is whether or not these three defendants are entitled to this whole fund of $28,305.93; how this fund is to be managed, collected and distributed if they are not entitled thereto; and whether $9,199.41 of the principal thereof (about one-third of it) and an equal portion of the income collected therefrom, claimed by these three defendants, belongs to plaintiff and defendant Mary W. Vanlandingham.

The court found that the three defendants James M. Vanlandingham, Belle Slaughter and Ida Barnes were the owners of the whole fund of $28,305.93, and that neither plaintiff, defendant Mary W. Vanlandingham, nor defendant Joe T. Doherty had any interest whatever in said fund. Judgment was entered dismissing plaintiffs' petition and denying the relief asked for in the answer of Mary W. Vanlandingham. Both plaintiff and Mary W. Vanlandingham, hereinafter referred to as appellants, appealed therefrom, and by stipulation their appeals have been consolidated.

Appellants contend that by the first sentence of the fourth paragraph of the will the remainder, subject to the life estate of the testator's widow, vested at the testator's death in the five persons (brothers, sisters and nephew) who survived him and composed the class designated by his will to ultimately take his property; that the second sentence did not cut down this vested estate; but that it either referred to the death of these persons before the testator or stated a contingency, upon the occurrence of which the absolute interest given each might be devested, namely: death with issue before

the death of the life tenant. Respondents contend that remainder created by the will "was contingent and not vested; that it did not become vested until the death of testator's widow; that at that time it vested in only those of testator's heirs who were then alive;" and that this indicated an intention that all of testator's property should go only to those of his own blood.

While the primary rule of construction of wills is to determine the "true intent and meaning of the testator" (Sec. 567, R. S. 1929), this intention must be determined by what the will actually says and not by what we might imagine the testator intended to say or would have said if he had decided to further explain his intention. [Evans v. Rankin, 329 Mo. 411, 44 S. W. (2d) 644; Pommer v. Catholic Church, 316 Mo. 1016, 292 S. W. 417; Wooley v. Hays, 285 Mo. 566, 226 S. W. 842; Cox v. Jones, 229 Mo. 53, 129 S. W. 495; 16 A. L. R. 1, note.] Almost every will presents some difference in language and circumstances, so that, to some extent, each must be considered apart from any other case in order to ascertain its meaning in the light of the facts as they were known and considered by the testator. However, unless the intention is so clear that there is no room for construction, certain auxiliary rules of construction are looked to because they have been found by experience to more often reach correct results and because they are based upon policies which have been formulated in the interest of the public welfare.

One such rule is that words are usually to be understood in their ordinary sense and primary meaning. Therefore, words, with a well-known technical meaning, should be construed according to their technical meaning unless a contrary meaning clearly appears from the context of the will. [Drake v. Crane, 127 Mo. 85, 29 S. W. 990; Cross v. Hoch, 149 Mo. 325, 50 S. W. 786 (where context of will and fact that it was drawn by a layman was held to require a different interpretation); Loud v. St. Louis Union Trust Co., 298 Mo. 148, 249 S. W. 629; 28 R. C. L. 223, secs. 184-85.] Another rule is that the law favors vested estates, so that, unless the testator has by very clear words manifested his intention to the contrary, the persons who take under his will, as the members of a designated class, must be determined at the death of the testator and the estates given them vested then. [Evans v. Rankin, 329 Mo. 411, 44 S. W. (2d) 644; Palmer v. French, 326 Mo. 710, 32 S. W. (2d) 591; Ewart v. Dalby, 319 Mo. 108, 5 S. W. (2d) 428; Owens v. Men & Millions Movement, 296 Mo. 110, 246 S. W. 172; Baker v. Kennedy (Mo.), 238 S. W. 790; Dunbar v. Simms, 283 Mo. 356, 222 S. W. 838; Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 197 S. W. 261; Carter v. Long, 181 Mo. 701, 81 S. W. 162; Tindall v. Tindall, 167 Mo. 218, 66 S. W. 1092; Chew v. Keller, 100 Mo. 362, 13 S. W. 395.] One good reason for the latter rule is that "testators usually have in mind the actual enjoyment rather than the technical ownership of their

1062

property." [McArthur v. Scott, 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015.] As a result of these rules, it is generally held that, in the absence of a clear contrary indication, those who compose a class described in a will as the testator's heirs, to whom a remainder or executory interest is given, are to be ascertained at the death of the testator (23 R. C. L. 549, sec. 92; 49 A. L. R. 178, note, and cases cited); and that a remainder given to them thereby is vested in them at that time (Ann. Cas. 1917A, 859, note, and cases cited; 25 British Ruling Cases, 695, note); or as otherwise stated, "where a testator, after devising particular estates, makes an ultimate devise to his heir at law, such ultimate devise does not create a contingent remainder in favor of the person who shall answer the description of heir at law on the expiration of the particular estates, but creates a vested interest in favor of the person who is the heir at law of the testator at the time of his death." [2 Fearne on Remainders, 210.]

"The word 'heir,' unqualified by any adjective, is a technical word denoting the person on whom the law casts the inheritance on the ancestor's deceased." [2 Fearne on Remainders, 211.] A man does not have heirs until he dies. Laymen often use the word "heirs" as meaning "heirs apparent," usually thinking of descendants. Therefore, such a construction is sometimes made by the courts but this is more often done to provide for direct descendants than for collaterals. [See Evans v. Rankin, supra, and cases cited.] Appellants claim that the proper construction of the word "heirs" here is "heirs apparent" and they argue that this is shown by the fact that the testator's direction was to divide his estate "equally among my heirs." They say that he must have meant to divide it equally among the five who would have been his heirs had he died immediately after the will was made and that he would not have desired that the four children of James (if, for example, he died before the testator) should receive equal shares with the other four, thereby reducing the shares from fifths to eighths. Appellants further argue from this premise, upon the authority of the above-cited cases, that the meaning of "in the event of the death of any of my heirs" in the second sentence is the death of one of these five "heirs apparent" before the death of the testator. Had the testator specifically named his brothers and sisters and his nephew as those entitled to the estate after his widow's death, such a construction might more reasonably be claimed proper. Even then, where there are alternative provisions upon the death of a remainderman, rather than upon the death of a first taker, the rule is stated: "Where there is a gift of a particular interest in the same property, antecedent to the gift to the person whose death is spoken of, the death, in the absence of a contrary intent is construed to be a death in the lifetime of the first taker whether subsequent or prior to the death of the testator." [2 Fearne on Re-

mainders, 342, sec. 658; 28 R. C. L. 259, sec. 232; 40 Cyc. 1500; see, also, Stevenson v. Stearns, 325 Mo. 646, 29 S. W. (2d) 116.]

If the testator had meant to limit the ultimate distribution of his estate to these five, living when he made his will, he could have accomplished this purpose either by naming them, or by providing as he did for his heirs and, in case any of the five died before he did, by changing his will to meet the new situation thus created if he so desired. Whether he would have changed it, if that had happened, we do not know, but we do know that he stated that the persons among whom his estate should be divided should be his "heirs." He also made a distinction between his "heirs" and "issue" of his heirs who died, and he said that, in the event of the death of any of them, their share should "*descend* to their issue." They could only have had a descendable estate after the death of the testator. Nor do we think that in this case the testator's wife would be included by the term "my heirs," as respondents suggest (see 28 R. C. L. 255, sec. 228), especially since by this will it was clearly provided what property she should take absolutely and what she should have during her life. ■ We, therefore, see no reason why we should not give the word "heirs" its correct meaning and we hold that the persons, who are given the property at the death of the testator's widow, by the first sentence of the fourth paragraph, are those who became the heirs of the testator at the date of his death.

■ It necessarily follows that "the death of any of my heirs," referred to in the second sentence of the fourth paragraph, means the death of any of them after the death of the testator and before the death of his widow. But does that mean that the remainder does not vest in them until her death? If the persons who became the testator's heirs were determined at his death, is it not also true that the remainder vested in them at the death of the testator? Respondents contend that it did not for two reasons: First, that there is no gift of the estate to them except in the direction to divide the estate at her death; and, second, that the provision of the second sentence, for the issue of such of the heirs as may die, makes it uncertain who will ultimately be entitled to the estate. Preliminary to considering these contentions, we may say "that the vesting of interests in personalty is subject to the same rules as real estate, especially where, as here, both are included in the will. [Deacon v. St. Louis Union Trust Co., 271 Mo. 669, l. c. 688, 197 S. W. 261; as to executory devises see 1 Fearne on Remainders, 403.] While the testator's residuary estate was in fact all personal property the paragraph in question disposed of it whether it should be real or personal, and it could have been either or both when he died.

■ The first reason stated by respondents is inapplicable in this case. The generally followed rule is that directions for the division of property, after the termination of a particular estate therein, are

construed, in the absence of a clear contrary intention, to relate to the commencement of the remainderman's enjoyment thereof and not to the vesting of his title. [23 R. C. L. 536, sec. 82; 49 A. L. R. 185, note; Plummer v. Roberts, 315 Mo. 627, l. c. 660, 287 S. W. 316; Deacon v. St. Louis Union Trust Co., 271 Mo. 669, l. c. 688, 197 S. W. 261; In re Collier's Will, 40 Mo. 287.] Cases cited by respondents are those in which an intention that the title should not immediately vest was clearly shown. The same thing is true of cases cited by respondents upon their second proposition. such as Eckle v. Ryland, 256 Mo. 424, 165 S. W. 1035, and Dickerson v. Dickerson, 211 Mo. 483, 110 S. W. 700. In the Dickerson case those designated to take the property were the "surviving children and grandchildren" at the death of the life tenant. In the Eckle case a deed to a trustee, because of the use of the word "and" in one place and the word "or" in another, was construed to postpone vesting until the termination of the life estate. Many other cases could be cited where particular language under consideration has been held to indicate an intention that the membership of the class, to whom property was ultimately to go, should be determined at the death of the life tenant rather than at the death of the testator. [See 49 A. L. R. 193-4, note; Ann. Cas. 1917A, 864, note; Buxton v. Kroeger, 219 Mo. 224, 117 S. W. 1147; De Lassus v. Gatewood, 71 Mo. 371; Tevis v. Tevis, 259 Mo. 19, 167 S. W. 1003; Ernshaw v. Smith (Mo.), 2 S. W. (2d) 803.]

This will, however, does not say that the property shall be divided among "surviving" or "then living" heirs, nor does it use any of the other words or phrases which have been held to mean that only those, who at the death of the life tenant might be the heirs of the testator, were intended to have the ultimate estate. It merely uses the term "my heirs" without any qualification or explanation. The provision for issue is that "the share they (my heirs) would have *received* if living shall *descend* to their issue. Does this not imply a vested interest, the enjoyment of which was yet to be *received;* the title to which could *descend* to their issue? Furthermore, the second sentence of this paragraph does not say that if any of the testator's heirs die (before the life tenant) *without issue* there shall be any different disposition of their share than that already made by the first sentence thereof. To reach respondents' construction, we must add to the second sentence so that, instead of what it actually says, it would read as follows:

"In the event of the death of any of my heirs (with issue), then the share they would have received if living shall descend to their issue *and in the event of the death of any of my heirs without issue then the share they would have received if living shall go to my heirs who survive them and who are living at the death of my wife."* (Our italics.)

On neither reason nor authority can this be done. While the exact situation in this case apparently has not arisen in a Missouri case, this court has declared the principles upon which it is to be decided and the same state of facts have been passed upon by courts of other jurisdictions. Such a case was ruled by the Court of Chancery in England in 1804, Smither v. Willock, 9 Ves. 234. The case was stated thus: ''The question in this cause arose upon a bequest of personal estate and of money arising from the sale of real estate, to the testator's wife for her life; and from and after her death, the capital to be divided between the testator's brothers and sisters, named in the will, in equal shares; but in case of the death of any of them in the lifetime of the wife, the shares of him or her so dying, to be divided between all and every one of his, her, or their children. One of the testator's brothers died in the lifetime of the testator's widow, without having ever had a child.'' The court held ''the share of the deceased brother to be vested, subject to be devested only in the event of his death in the life of the testator's widow, leaving children; and consequently, that event not having happened, his representative was entitled.'' [See, also, Hervey v. M'Laughlin (1815), 1 Price, 264, where the principal controversy was between the children of a deceased remainderman and his personal representative; and Galland v. Leonard (1818), 1 Swanston, 161, where none of the remaindermen died.]

The same principle was involved in Harrison v. Foreman (1800), 5 Ves. 206, where the testator made a bequest to one for life and after the death of the life tenant to his cousin's two children equally. He further provided that, in case of the death of either of them in the lifetime of the life tenant, the whole should go to the survivor of them. Both children died before the life tenant. The court held that these two children each took a vested interest to be devested upon a contingency which never took place, that is, the death of only one of them before the death of the life tenant. The court said:

''If there is a clear vested interest, the court is only to see, what there is to take it away; and the only contingency is, that in case of the decease of either of them in the life of Mrs. Barnes (life tenant) the whole is to go to the survivor. Neither of them was living at her death. . . . There is a vested interest; and the contingency, upon which it is to be devested, never happened; the vested interest therefore remains; as if that contingency had never been annexed to it. . . .''

A Missouri case, similar in principle to the above cases, is Sullivan v. Garesche, 229 Mo. 496, 129 S. W. 949, where two sisters were devised property by their mother with the provision ''that, in the case of the death of either of these two daughters, her estate should go to the other, and in case of the death of both before marriage the property should be divided among'' my surviving children. This court

held that the condition was an executory devise; that the two daughters had a vested estate in fee simple which could be devested by the death of both of them unmarried leaving one or more of the brothers or sisters surviving; but that "if they or either of them should marry it would be the end of all expectation of the other children to take under the will; and that, likewise, if all of the other children died before the two daughters the fee would be absolute in them, whether married or not, since in either event (marriage of one of them or prior death of all of their brothers and sisters) that contingency upon which their vested fee was to be devested could never occur. Also, in Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 197 S. W. 261; Collins v. Whitman, 283 Mo. 383, 222 S. W. 840; and Trautz v. Lemp, 329 Mo. 58, 46 S. W. (2d) 135 (which will had the provision, lacking here, that if a remainderman died without surviving children his interest went to the other remaindermen); provisions for an interest to go to issue or children of remaindermen were held to be executory limitations, which did not prevent vested estates in the remaindermen at the death of the testator but which were subject to be devested upon the occurrence of the stated contingency; namely, death with surviving children prior to the time designated in the will for coming into enjoyment of the estate. [For a discussion of the earlier Missouri authorities see Executory Limitations of Property in Missouri, 11 U. of Mo. Law Bulletin, 3; see, also, 1 Fearne on Remainders (Executory Devises) 381.]

The rule of all of these cases is stated in 2 Fearne on Remainders, 280, as follows:

"*Where a conditional limitation is limited in favor of unborn persons, or persons who shall answer a given description, and no such persons come in esse or answer such description, the preceding estate becomes absolute:* because, although the express condition may have been fulfilled, on which such estate is to go over, yet, as there is no one to whom it can go over, according to the terms of the conditional limitation, it must of necessity remain undevested by the fulfillment of the express condition." (Italics ours.)

Is not that the situation here? If the remainder vested in the heirs of the testator at his death, subject to an executory limitation in favor of the issue of such of them as died with issue before the life tenant, then in the case of any of them dying without issue the condition for the devesting of their vested interest was never fulfilled. The Supreme Court of the United States followed this rule, citing Smither v. Willock, supra, in McArthur v. Scott, 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015. In that case a testator left property in trust, the income to be divided equally among his five children or the issue of any child dying, and among his grandchildren also as they successively came of age, until after the death of all of his

children and until the youngest grandchild "'who may live to be twenty-one years of age shall arrive at that age," at which time the property ";shall be inherited and equally divided between my grandchildren per capita . . . if any grandchild aforesaid shall have died before said final division is made, leaving a child or children lawfully begotten, such child or children shall take and receive *per stirpes* the share of my said estate both real and personal which the parent of such deceased child or children would have been entitled to have and receive if living at the time of such final distribution."

The question before the court was whether these grandchildren (entitled to have the estate equally divided between them after the death of all of the testator's children and when the youngest grandchild became 21 years of age) had a contingent remainder which would only vest in the grandchildren then living and the issue of those deceased; or whether the remainder vested immediately in the grandchildren, living at the death of the testator, thereafter opening to let in after-born grandchildren and vested in them successively at birth, which would be devested as to the shares of those grandchildren, only, who should die leaving children before the termination of the trust estate. The court held that the latter construction was the correct one, saying:

"Words directing land to be conveyed to or divided among remaindermen after the termination of a particular estate are always presumed, unless clearly controlled by other provisions of the will, to relate to the beginning of enjoyment by the remaindermen, and not to the vesting of the title in them. For instance, under a devise of an estate, legal or equitable, to the testator's children for life, and to be divided upon or after their death among his grandchildren in fee, the grandchildren living at the death of the testator take a vested remainder at once, subject to open and let in after-born grandchildren; although the number of grandchildren who will take, and consequently the proportional share of each, cannot of course be ascertained until the determination of the particular estate by the death of their parents. [Doe v. Considine, 6 Wall. 458; Cropley v. Cooper, 19 Wall. 167; Dingley v. Dingley, 5 Mass. 535; Doe v. Provoost, 4 Johns. 61; Linton v. Laycock, 33 Ohio St. 128; Doe v. Perryn, 3 Term. R. 484; Randoll v. Doe, 5 Dow, 202.] *So, a direction that personal property shall be divided at the expiration of an estate for life creates a vested interest.* [Shattuck v. Stedman, 2 Pick. 468; Hallifax v. Wilson, 16 Ves. 168; In re Bennett's Trust, 3 Kay & J. 280; Strother v. Dutton, 1 De G. & J. 675.]

"The remainder, being vested according to the legal meaning of the words of gift, is not to be held contingent by virtue of subsequent provisions of the will, unless those provisions necessarily require it. The subsequent provisions of this will had other objects.

The direction that if any grandchild shall have died before the final division, leaving children, they shall take and receive *per stirpes* the share of the estate, both real and personal, which their parents would have been entitled to have and receive if then living, was evidently intended merely to provide for children of a deceased grandchild, and not to define the nature, as vested or contingent, of the previous general gift to the grandchildren; and *its only effect upon that gift is to divest the share of any grandchild deceased leaving issue, and to vest that share in such issue.* [Smither v. Willock, 9 Ves. 233; Goodier v. Johnson, L. R. 18 Ch. Div. 441; Darling v. Blanchard, 109 Mass. 176; 1 Jarman on Wills (4 Ed.) 870.]'' (Italics ours.)

Is it not reasonable to construe the testator's intent as being that his ''heirs'' (at his death) should take a vested interest per capita, but that the ''issue'' of any of those, who died before coming into the enjoyment of their interest, should take such share *per stirpes?* It would not seem to make any difference, in the result of this controversy, whether such ''issue'' would take as purchasers under the will or by inheritance from their deceased parent provided for by the will. It would have made a difference in Hervey v. M'Laughlin, supra, where the controversy was between the children and the personal representative of the remainderman named in the will; (so, also, if rights of creditors of a deceased remainderman were involved). Cases from many of our State courts following the rule of the above cases are collated in an annotation in 37 L. R. A. (N. S.) 730. Some of those which involve the point presented here (the right of the other persons given the ultimate estate by the will as against the personal representative of one of them, dying without issue prior to coming into enjoyment thereof, where the estate was to go to their children or issue in case of death before the life tenant) are Carroll v. Carroll's Exr. (Ky.), 58 S. W. (2d) 670; Wells v. Bennett (N. J.), 135 Atl. 146; Corson v. Thornburn (Ill.), 154 N. E. 144; Hammond v. Martin, 100 Kan. 285, 164 Pac. 171; Cox v. Handy (Md.), 27 Atl. 227, 501; In re Carstensen's Estate (Pa.), 46 Atl. 495; In re Jennings' Estate (Pa.), 109 Atl. 544. The rule of these cases is summarized in 23 Ruling Case Law, 538, section 83, as follows:

''A provision in a limitation of a remainder to a class that the children, heirs, descendants, etc., of a deceased member of the class shall take the deceased remainderman's share is not of itself sufficient to prevent the remainder from being held to be vested. . . . In some cases such provisions are regarded as having been inserted to protect the issue of a remainderman from the supposed consequence of their parent's death in the lifetime of the testator. . . . Words to the effect that the issue of the deceased children shall take by right of representation are not uncommon in wills, when strictly

speaking they are entirely unnecessary; and the use of so familiar and common an expression does not carry with it a strong inference that the testator thereby designed to express some peculiar intention with reference to the vesting or contingency of the interest devised. In other cases such provisions are regarded as denoting merely the inheritable quality of the estate. (Note: the use of the word "descend" in this will might be reason for such a construction of the provision for "issue" here.) Such a provision does not operate in any way to abridge the estate given the remaindermen, even though it is regarded as creating a substitutional or alternative gift. In some cases such dispositions of the shares of deceased members of a class seem to have been regarded as in the nature of limitations of substituted remainders." (Parenthesis ours.)

■ Our conclusion is that the first sentence of the fourth paragraph of the testator's will created a life estate in his wife and vested remainders in equal shares in the five persons (his brothers, sisters and nephew) who answered the description of the testator's heirs at his death; that the second sentence of this paragraph was not a provision for a contingent remainder but, at most, was no more than a contingent executory devise which would devest the title of such of these five remaindermen who should die, with issue, prior to the death of the life tenant and vest such interest in their issue; that, since neither Frank T. Vanlandingham and Frank Rixey died with issue, the only contingency which could devest their title never happened; that, whether the provision for issue was an executory devise (which would seem to better reach the apparent result sought by the testator, providing for descendants of deceased heirs) or merely indicated that an inheritable estate was vested in the remaindermen, respondents would not take the shares claimed by appellants; and that, therefore, the title to the vested remainder of Frank T. Vanlandingham passed at his death intestate to his legal representatives, while the title to the vested remainder of Frank Rixey passed at his death by his will.

The judgment is reversed and the cause remanded with directions that further proceedings be had in accordance with the views herein expressed. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* absent.