## CLYBURN *v.* CLYBURN.

## Opinion delivered November 7, 1927.

1. DIVORCE—RIGHT TO ABSOLUTE DIVORCE.—In a suit by a wife for maintenance and support, in which the husband filed a cross-bill for divorce, evidence showing that the parties could not live together as husband and wife after making an honest effort to do so, and that the marital relationship had been shattered beyond repair, through the fault of both parties, but principally through the wife's jealousy, *held* the husband is entitled to an absolute divorce, rather than a divorce from bed and board.

2. DIVORCE—WHEN ABSOLUTE DIVORCE GRANTED.—A divorce *a vinculo matrimonii* may be granted on the same ground as a divorce *a mensa et thoro*, and should always be granted where the evidence warrants the granting of either, unless by granting a divorce *a mensa et thoro* a reconciliation might be effected.

3. DIVORCE—WHEN ALIMONY ALLOWED.—The chancery court has power to allow alimony to a wife against whom a decree of divorce is granted, the amount thereof being governed by the circumstances of each case.

4. DIVORCE—ALLOWANCE OF ALIMONY.—In a wife's suit for maintenance and support, in which the husband was granted a divorce, where the wife retained their three children, one of whom was a minor, an allowance of $37.50 per month alimony to the wife was warranted, in view of the husband's earning capacity.

Appeal from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; reversed in part.

*Samp Jennings,* for appellant.

*Powell, Smead & Knox,* for appellee.

HUMPHREYS, J. This suit was commenced by appellee against appellant in the chancery court of Union County for maintenance and support of herself and eighteen-year-old son, making necessary statutory allegations to obtain same. The gist of the complaint is that appellant, her husband, voluntarily and without cause ceased to live with her on November 26, 1924, as his wife, and since that time has failed to care for and maintain her and their son as he should, out of his earnings of $350 per month as a locomotive engineer for the Chicago, Rock Island & Pacific Railway Company. She prayed for an allowance of $100 per month for the maintenance and support of herself and son.

Appellant filed an answer, denying the alleged cause of action and the extent of his earning capacity, and a cross-bill for an absolute divorce, upon the alleged ground that appellee had offered him indignities which rendered his condition in life intolerable; that she had been unjustly jealous of him for a number of years, and, on that account, had wrongfully accused him of being intimate with other women, and continually quarreled and nagged at him, so much so that he was forced to leave home to obtain any peace of mind and rest between his railroad runs.

Appellee filed a reply denying the alleged indignities set up in the cross-bill for divorce.

The cause was submitted to the court upon the pleadings and testimony adduced by the respective parties, which resulted in a decree in favor of appellee for $37.50 per month for support and maintenance, the use of their home in El Dorado for her life, and a decree in favor of appellant from bed and board. Appellant has duly prosecuted an appeal from that part of the decree granting him a decree of divorce from bed and board instead of an absolute decree of divorce, and in allowing appellee $37.50 per month for the support of herself and son.

Appellant and appellee were married on November 11, 1894, and lived together, with the exception of about three months in 1922, until November 26, 1924, at which time they separated. Appellee remained in appellant's home with her three sons, Neil, 31 years old, Roy, 24, and Howard, 18, and appellant moved to other quarters. After appellant left home the two older sons paid board to their mother, and with that, with a little room rent which she collected for a time, and the contributions from her husband to herself and son, she maintained the home. Appellant's contribution consisted largely in paying grocery bills and in purchasing clothing for and furnishing spending money to Howard. His earnings have dropped off considerably the last few years, and his personal expenses have increased since leaving home.

After the first separation, appellant and appellee remained apart for three months, at which time a reconciliation took place, and they lived together in peace and harmony for awhile, but drifted back into the turbulent life they were living prior to the first separation. Strife existed between the father and oldest son to such an extent that it became impossible for them to live together in the home. Appellee took the side of her 31-year-old son, and insisted that her husband must go, if either left home. During these latter years there was little or no congeniality between appellant and appellee, and, as a result, there were many bickerings and frequent quarrels. Appellee became intensely jealous, charging appellant with infidelity. In fact, most of the quarreling resulted from the charges she made against him of intimacy with the women with whom he boarded when out on his railroad trips. He boarded where the other railroad men boarded. The charges she made against him were based largely upon rumor, and, so far as the record discloses, there was little or no foundation for them. Appellee went to the extent of having policemen raid the houses and hotels in which he stopped in an effort to ascertain the truth of the rumors. The record reflects that both parties were to blame, but, according to the weight of the testimony, appellee was to blame in a greater degree than appellant. The only disinterested witness who testified to the alleged ground for divorce was Mrs. Mae Bishop. She and her husband lived in the home of appellant and appellee from February, 1924, to April, 1925, and did light housekeeping. They were there when the final separation occurred. Mrs. Bishop testified that she heard appellee tell appellant to get his trunk and leave; that, after he left, appellee came into her room and said she did not care if he had gone, as she had three sons to support her; that she did not need him; that appellee fussed at appellant all the time that he was around the house.

Appellee herself testified that she had lost all her love for appellant, and the oldest son admitted that he disliked his father and quit speaking to him.

It is apparent that the appellant and appellee can never live together as husband and wife again. They made an honest effort to do this, and failed. The marital relationship has been shattered beyond repair or redemption. No useful purpose could be served by granting the divorce to appellant from bed and board only. It is true that appellant was not blameless, but much that he did and said was due to provocation emanating from the jealous heart of appellee. She was to blame in a greater degree than he for the irreparable situation. A divorce *a vinculo matrimonii* may be granted upon the same ground that divorce *a mensa et thoro* may be, and it should always be granted where the evidence warrants the granting of either, unless by granting the latter a reconciliation might be effected.

We think the chancery court correctly found that appellant was entitled to a divorce, but erred in granting him a divorce from bed and board only instead of an absolute one.

In the matter of the allowance of alimony we agree with the chancery court. A chancery court has the power to allow alimony to a wife against whom a decree of divorce is granted. The amount allowed should be governed by the circumstances of each particular case. *Prior* v. *Prior*, 88 Ark. 302, 114 S. W. 700, 129 Am. St. Rep. 102; *Shelpman* v. *Shelpman*, 153 Ark. 110, 239 S. W. 728.

In the instant case appellant and appellee lived together for thirty years. Appellee bore him five children, three of whom are living and residing with their mother. She was decreed the house for life, and she will have to keep the taxes paid and make the necessary repairs upon the property. The station in which appellant and his family lived, when considered in connection with his earning capacity, justified the expenditure of a considerable amount each month. They kept a servant most of the time. Although his earnings are less than they were, and his personal expenses have increased on account of the separation, it will work no great hardship on him to pay $37.50 a month, the amount allowed her by the chan-

cery court. It must be remembered that appellee has no ability to earn, having contributed her life to the care of a large family and the many duties incident to housekeeping. From aught that appears, she performed her duty well until jealousy entered her heart and obsessed her mind. She at least had rumor, and a picture of another woman she found in appellant's pocket, to support her change in attitude toward him. Had appellant been considerate and kind at all times, instead of inconsiderate and harsh, he might have disabused her mind of the effect produced by rumor and the discovery of the picture. It perhaps disclosed a lack of confidence on her part to search his pockets, but it only added fuel to the flame to carry the picture of another woman in his pocket. The circumstances detailed above warrant the allowance made by the chancellor.

The decree for alimony will be affirmed, but the decree from bed and board will be reversed, and the cause remanded, with directions to enter a decree for absolute divorce in favor of appellant.

HART, C. J., and KIRBY and MEHAFFY, JJ., dissent from the allowance of alimony.