THOMAS M. HOPPER AND PAUL L. SANDERS, PLAINTIFFS-APPELLANTS, v. WILLIAM N. GURTMAN, DEFENDANT-RESPONDENT.

Argued May 23, 1940—Decided January 28, 1941.

For the appellants, *Charles Bernstein.*

For the respondent, *Aaron Z. Schomer.*

The opinion of the court was delivered by

HEHER, J. This is an action in tort for the negligent performance of a duty undertaken by the defendant attorney and counsellor-at-law to examine the title to real estate and to advise his clients whether the title was "good and marketable," and to what extent encumbered; and the primary question for decision is whether the husband's inchoate right of curtesy in his wife's lands is, by force of the law pre-existing the effective date of chapter 71 of the Laws of 1927, as amended by chapter 209 of the Laws of 1928 (*Pamph. L.* 1927, *p.* 128; *Pamph. L.* 1928, *p.* 380; *R. S.* 1937, 3:37-2), liable to seizure and sale, with the wife's estate of inheritance, under an execution issued upon a judgment recovered against husband and wife jointly. Children were born of the marriage capable of inheriting the estate.

At common law, the husband, in virtue of the marriage alone, becomes vested of a freehold estate, *jure uxoris,* in his wife's lands, and thereby is immediately entitled to the rents, issues and profits thereof. This has no relation to the estate by the curtesy, since its existence does not depend upon the birth of issue, and it continues only during coverture. It is a vested interest that becomes merged in the indefeasible freehold estate of curtesy upon the birth of living offspring capable of inheriting the wife's estate. By the birth of issue alive, the husband's estate is converted *instanter* into a vested legal estate for his natural life, termed curtesy initiate, which becomes consummate upon the death of the wife. Curtesy is an estate arising by operation of law, likened somewhat to title by descent. *Nicholls* v. *O'Neill,* 10 *N. J. Eq.* 88; *Johnson* v. *Cummins,* 16 *Id.* 97; *Porch* v. *Fries,* 18 *Id.* 204; *Naylor* v. *Field,* 29 *N. J. L.* 287; *Cushing* v. *Blake,* 30 *N. J. Eq.* 689; *Castner* v. *Sliker,* 43 *Id.* 8; *Trade Insurance Co.* v. *Barracliff,* 45 *N. J. L.* 543; *Doremus* v. *Paterson,* 69 *N. J. Eq.* 188; *affirmed, Ibid.* 775; *Hackensack Trust Co.* v. *Tracy,* 86 *N. J. Eq.* 301; *Bucci* v. *Popovich,* 93 *Id.* 121;

*affirmed, Ibid.* 511; *Mullen* v. *Mullen,* 98 *Id.* 90; *affirmed, Ibid.* 728; *Hannan* v. *Wilson,* 100 *Id.* 528. See, also, *Denny* v. *McCabe,* 35 *Ohio St.* 576; *McNeer* v. *McNeer,* 142 *Ill.* 388; 32 *N. E. Rep.* 681; *Mettler* v. *Miller,* 129 *Ill.* 630; 22 *N. E. Rep.* 529.

There is confusion in the cases as to the precise nature of the modification of the common law tenancy by the curtesy effected by the Married Woman's Act of 1852, as supplemented and amended. *Pamph. L., p.* 407; *Nixon's Digest* 466; *Rev. Stat.* 1877, *p.* 636; *Comp. Stat.* 1910, *p.* 3222; *R. S.* 1937, 37:2-12. Clearly, it abolished the estates *jure uxoris* and curtesy initiate. Does the husband have any interest or estate in his wife's lands prior to curtesy consummate, and, if so, what is its nature?

By sections 1 and 3 of the original enactment, the real and personal property of the wife "shall be her sole and separate property, as though she were a single woman." In *Porch* v. *Fries, supra,* Chancellor Zabriskie declared that, by virtue of that provision, the husband has, during coverture, "no interest or estate in the lands of his wife. She holds them to her separate use as if she were a *feme sole,* free from his control. She can sell them with his assent, and if she so sells and conveys them, she conveys them as she holds them, free from any interest or estate of her husband. At common law, the death of the wife was necessary to the estate by curtesy. * * * But upon the birth of a child, another anomalous estate was created, called tenancy by the curtesy initiate. It was the increasing the estate for their joint lives, which he held before in his wife's lands, into an estate for his own life. The Married Woman's Act, as it prevented his acquiring any interest in his wife's estate during her life, destroyed the estate of tenancy by the curtesy initiate." That statute "does not defeat the husband's curtesy at the death of the wife, provided she has not aliened her estate before. The act only protects her estate during her life; it does not, at her death, affect the law of succession as to real or personal estate." And in *Cushing* v. *Blake, supra,* Mr. Justice Depue, in a deliverance for this court, said: "Upon principle, as well as by the weight of authority, it may be regarded as

settled that the husband's estate by the curtesy will arise in him at the death of his wife, though the limitation to her during her life is for her sole and separate use, exclusive of any interest or control on the part of the husband. The limitation for her separate use terminates at her death. Seizin by the husband during coverture is not necessary to his curtesy. Possession in conformity with the equitable interests of the *cestui que trust,* whether by the *cestui que trust,* or by the trustee, is all that is essential to support the title of the husband as tenant by the curtesy. * * * Curtesy is a legal incident of the wife's estate of inheritance, and is a right favored in the law. * * * The Married Woman's Act most effectually makes the estate of the wife her separate estate, and yet it has not abolished the husband's curtesy after her death."

In *Trade Insurance Co.* v. *Barracliff, supra,* this court, through Mr. Justice Dixon, ruled that, notwithstanding the provisions of the Married Woman's Act, the husband, "by the birth of offspring * * * obtained an inchoate right which, on his wife's death, he surviving, would bloom into a freehold," and that, where the husband and wife were in the possession and enjoyment of the wife's lands, in which he had such inchoate interest, he had an insurable interest therein. This doctrine of "inchoate curtesy" seems first to have found lodgement in our jurisprudence—apparently in analogy to the common law inchoate right of dower, one having different attributes, however—in the case of *Ross* v. *Adams,* 28 *N. J. L.* 160; reversed on other grounds, 30 *Id.* 505, where the opinion of the Supreme Court terms the husband's interest, after the birth of issue, as a tenancy "by the curtesy inchoate," characterized as "a future or contingent interest which would pass by" the husband's mortgage.

In *Castner* v. *Sliker, supra,* Chancellor McGill, invoking the case of *Porch* v. *Fries,* held that the husband was not a necessary party to a suit for partition instituted by the wife, since under the Married Woman's Act the husband then had no estate or interest in his wife's lands. See, also, *Young* v. *Young,* 45 *N. J. Eq.* 27. And in *Bristol* v. *Skerry,* 64 *Id.* 624, Vice-Chancellor Grey said that, notwithstanding the

Married Woman's Act, the husband "still has an equity which" Chancery "will recognize, and which makes him, though not a necessary, yet a proper party to his wife's suit. He still has power to prevent his wife from conveying her lands, for her deed made without his joining in it is a nullity. If a child be born during the coverture, and the husband survives his wife, he will yet take in them an estate by the curtesy complete."

In *Doremus* v. *Paterson, supra,* Vice-Chancellor Stevens expressed the view that the Married Woman's Act deprived the husband of "a freehold estate in possession" during his wife's life, but that, upon the wife's death (issue having been born alive), "he became entitled to a freehold interest in possession for his own life," of which "his wife could not by will or deed deprive him," and therefore it would seem that, in such circumstances, the husband has "an estate in remainder in his wife's land, which is as completely vested in him as any vested estate in remainder for life is ever vested in any remainderman," and so "such an interest as would make him a necessary party to any suit that might touch or affect his interest in his wife's land after her death." See, also, *Leach* v. *Leach, 69 N. J. Eq.* 620.

And in *Hackensack Trust Co.* v. *Tracy, supra,* Chancellor Walker gave voice to the same view. He suggested that the Married Woman's Act deprived the husband only of his "possessory right or interest" in his wife's lands—the common law tenancy by the curtesy initiate is a freehold estate in possession—and that "the right and interest" which the husband "has to succeed to a freehold estate in possession for his own life after" his wife's death (issue being born alive) "inheres in him from the time of the marriage until his death during her lifetime;" and further, that the husband has "a contingent estate in remainder in his wife's land during coverture before the birth of issue, just as he has a vested estate in remainder after the birth of issue," and that this contingent estate in remainder should "be conserved for his possible succession to it." He continued: "It is obvious that when a man marries a woman possessed of real estate, there is at least a possibility of his succeeding to the enjoy-

ment of that estate in possession. He is one to whom his wife's lands may come in remainder during his life after her death. As without the birth of issue he has no capacity to take in possession upon his wife's death in his lifetime, the estate is not vested but contingent, because the essential contingency which would entitle him to take the estate, namely, the birth of issue, has not happened. But after the birth of issue his estate becomes vested. It then becomes an inchoate right of curtesy, as we have seen." And he ruled that the husband is a necessary party to a proceeding instituted by the wife for the payment to her of the surplus arising from the sale of her lands in foreclosure (the husband having joined in the mortgage), since he has before issue born alive a contingent estate in remainder, and therefore a right to be heard on the question of whether the surplus money should be conserved awaiting his succession to the enjoyment of it upon his wife's death. Thus he classified an "inchoate right of curtesy" as a vested estate in remainder. See, also, *Reese* v. *Stires,* 87 *N. J. Eq.* 32.

In the case of *Bucci* v. *Popovich, supra,* this court adopted the opinion of Vice-Chancellor Fielder, and thus expressed concurrence in his view that, since the Married Woman's Act, the husband's interest in his wife's lands, after the birth of issue alive, "may be described as an inchoate right of curtesy, which is the right to take possession of her lands for his life, in case he survives her," and that "she cannot divest him of this right by her own conveyance, nor can he be divested by an involuntary sale of her lands under judicial proceedings against her, but he can lose his right during her life by his prior death, or by joining in a deed of conveyance with her, or by a decree of absolute divorce, or (in a proper case) under our statutes authorizing the sale of real property of a married woman when the property comes to her otherwise than through her husband and she is living separate from him." This "inchoate right of curtesy" was there deemed to be "a right created by or growing out of the marriage state, personal to him and not subject to the claims of his creditors." It was said that "He may at any time during coverture assent to a sale by his wife of her lands, and if he

signifies such assent by joining in a deed with her   \*   \*   \* she conveys, as a *feme sole* would, free from any interest or estate of her husband and free from any claim of her husband's creditors." The vice-chancellor construed the Married Woman's Act to exempt the husband's "inchoate right of curtesy" from levy and sale under an execution on a judgment against him alone, since the husband's "right or estate" might be superseded by "the right or estate of an utter stranger with whom the wife" would be obliged to "treat whenever she" desired "to convey her land or any interest therein," and she would be "unable to make a valid deed unless her husband" joined with her, "and besides his consent she" would be "required to obtain the release of the person to whom her husband's interest or estate" had been transferred, and, in such situation, "she would neither be seized nor possessed of her property for her sole and separate use as though she were a single woman, but rather her property, or an important interest therein, would be subject to the disposal of her husband, and, in effect, made liable for his debts, contrary to the statute."

Yet in the later case of *Hannan* v. *Wilson, supra,* this court reiterated without qualification the doctrine of *Porch* v. *Fries, supra.* The question was as to the sufficiency of a married woman's deed of conveyance of real estate, in which her husband, though he joined in the execution, "was not mentioned as a grantor in the body of the deed, and did not join in any of the covenants contained therein;" and Chief Justice Gummere declared that the husband's joinder in the wife's deed of conveyance of her lands was not then to convey an interest his by law, "for he has no present interest in the land which could be made the subject of a grant," but rather to signify his mere assent to the conveyance in accordance with section 14 of the Married Woman's Act, as revised; hence, it was not necessary, to render valid the wife's conveyance of her land, that the husband join in the grant itself or in the subjoined covenants. He cited with approval the holding of *Porch* v. *Fries, supra,* that under the statute the wife, during coverture, holds her lands "to her separate use as if she were a *feme sole,* free from" her husband's control,

and "can sell them with his assent, and, if she so sells and conveys them she conveys them, as she holds them, free from any interest or estate of her husband;" and he found legislative recognition of "the soundness of the doctrine * * * in section 14" of the Married Woman's Act (of this more presently), in that the husband's joinder was required to be in the *execution* of the conveyance, and not in the grant itself.

Is such a deed operative to convey the husband's estate by the curtesy consummate, whether it be termed vested, inchoate or contingent, or is it simply significant of the husband's assent to the wife's grant of her interest in the lands?

In the general revision of public laws adopted in 1877 (the case of *Porch* v. *Fries* was decided in 1867), there was incorporated in the Married Woman's Act (as section 14) a provision that, with certain exceptions, nothing therein contained should enable a married woman to convey or encumber her real estate, "without her husband joining therein as" theretofore; and that no "conveyance, deed, contract or act" of a married woman, nor "any judgment or decree against her," should "in any respect impair or affect the right of the husband in her lands as tenant by the curtesy, after her death * * *." *Rev. Stat.* 1877, *p.* 639; *Comp. Stat.* 1910, *p.* 3237. It is to be borne in mind, in looking for the legislative intention, that the early strictness of the common law disabled a married woman from making a deed of conveyance of her lands even though her husband joined therein. Such a deed was effective only to convey the husband's interest. Her deed was utterly void, and not voidable merely, so much so that she could plead to it *non est factum*. But, since her legal existence was deemed to have been merged in that of her husband, it came to be the generally accepted view in this country that her deed was valid if given with the assent of her husband, although in this state the original common law disability laid upon the wife continued until the enabling act of December 3d, 1743. *Rake* v. *Lawshee*, 24 *N. J. L.* 613; *Moore* v. *Rake*, 26 *Id.* 574; *Ross* v. *Adams, supra; Schickhaus* v. *Sanford*, 83 *N. J. Eq.* 454. In 1934, section 14 of the Married Woman's Act was amended to empower a married woman to "execute and

deliver any instrument relating to or affecting her estate, interest or right in her real property or in that of her husband with the same effect as if she were sole and unmarried," and to provide that "any such instrument shall be valid without the joinder therein or consent thereto of her husband; but no conveyance, deed, contract or act of such married woman and no judgment or decree against her shall affect any estate, interest or right of her husband in such property * * *." And section 5 was also amended to provide that "any contract relating to or affecting her estate, interest or right in her real property or in that of her husband shall be valid without the joinder therein or consent thereto of her husband, but shall not affect any estate, interest or right of her husband in such real estate." *Pamph. L., p.* 490; *R. S.* 1937, 37:2-16; 37:2-17.

It would seem, therefore, that if the Married Woman's Act, as revised and amended, merely destroyed the husband's freehold estate in possession in his wife's lands during coverture under the pre-existing law, and saved curtesy consummate against impairment by her deed, contract, or other act, or by judgment or decree against her, such tenancy by curtesy consummate is a vested life estate in remainder, for the characteristic of a vested remainder is a present capacity to take effect in possession or enjoyment on the certain determination of the precedent particular estate, rather than the certainty of enjoyment by the remainderman. It is the uncertainty of the right of enjoyment, and not the uncertainty of actual enjoyment, that renders a remainder contingent. *Doremus* v. *Paterson, supra; Cowan* v. *Storms,* 121 *N. J. L.* 336. But there is no occasion to pursue the inquiry to a definite conclusion.

However it may be classified—whether a vested estate, or a right contingent in nature and therefore, or for the reasons set forth in the case of *Bucci* v. *Popovich, supra,* beyond the reach of his individual creditors by execution, or an estate *sui generis* having the attributes of neither—the husband's estate in the wife's lands, following the birth of issue alive, is subject to seizure and sale, with the wife's title, under an execution issued upon a judgment recovered against them

jointly. In such circumstances, the law regards them as jointly seized of the fee. There is a unity of title and ownership, so much so that the husband and wife have the capacity jointly to convey the fee-simple absolute; and, on the plainest principles of justice, lands so held in unity are liable to execution for the satisfaction of the owners' joint judgment debt. This doctrine does not do violence to any of the foregoing considerations. It is not in contravention of any public policy. The origin of curtesy and its underlying philosophy are shrouded in the mists of antiquity. It has been suggested that the design was to aid the husband to maintain the offspring, but this evidently was not the primary reason, for the estate was not terminated by the death of the issue. Rather, it would seem that the object of its introduction into the English system was the continuation of the homage due from the tenant to his superior lord in early times—homage due from both husband and wife during the continuance of the freehold estate *jure uxoris,* and from the husband alone after it had been merged in the estate of curtesy initiate after the birth of issue. *Breeding* v. *Davis,* 77 *Va.* 639; 15 *Am. Jur.* 271, *et seq.*

At common law, as modified by statute, curtesy initiate, as well as curtesy consummate, is leviable and salable under an execution, although dower before assignment is not. These are not incidents of inchoate right of dower, since it has different attributes. *Nicholls* v. *O'Neill, supra; Wheeler* v. *Kirtland,* 27 *N. J. Eq.* 534; *Carter* v. *Executors of Denman,* 23 *N. J. L.* 260; *Wade* v. *Miller,* 32 *Id.* 296; *Shields* v. *Hunt,* 39 *N. J. Eq.* 489; *In re Alexander,* 53 *Id.* 96; *Schuhardt* v. *Wittcke,* 76 *Id.* 119; *Capital Circle, B. of U.* v. *Schmitt,* 84 *Id.* 95; *McNeer* v. *McNeer, supra; Breeding* v. *Davis, supra; Deming* v. *Miles,* 35 *Neb.* 739; 53 *N. W. Rep.* 665; *Van Duzer* v. *Van Duzer,* 6 *Paige* 336; *Witthaus* v. *Schack,* 105 *N. Y.* 332; 11 *N. E. Rep.* 649; 17 *C. J.* 430; 19 *Id.* 537; 23 *Id.* 238; 15 *Am. Jur.* 288; 21 *Id.* 206-208. The early common law regarded husband and wife as a unity, but that rule did not outlaw premarital contracts, with marriage as the consideration, whereby the prospective husband waived his right to curtesy during the coverture and after the wife's death. 15 *Id.* 292.

Since the statute renders liable to execution the "real estate" of which the judgment debtor "was seized on the day when such real estate became liable to" the judgment debt (*R. S.* 1937, 2:26-80), why should not the husband's "inchoate right of curtesy,". so-called, be liable to seizure and sale, with the wife's estate, in the execution of a judgment recovered against the husband and wife jointly. Reason and justice dictate that it should be, in the absence of a statutory inhibition. And we find none such.

Section 19 of the Act Respecting Conveyances (Revision of 1898) authorizes the devise, conveyance and assignment, by deed, of a "contingent or executory interest, right of entry for condition broken or other future estate in expectancy" in lands, "although the contingency on which such right, estate or interest are to vest may not have happened," with the proviso that nothing therein contained should "render any contingent estate or other estate or expectancy therein mentioned liable" to levy and sale under an execution. *Comp. Stat.* 1910, *p.* 1539; *R. S.* 1937, 46:3-7. But the proviso has no applicancy. If it be granted *arguendo* that the "inchoate right of curtesy" ordinarily takes the classification of a contingent or expectant estate or interest, the exemption from execution does not embrace such curtesy right where the execution issues upon a judgment against husband and wife jointly, and is directed to their joint estate in the wife's lands. Such is plainly not within the purview of this provision. It would seem to be axiomatic that, when husband and wife jointly incur an obligation, they thereby render the wife's heritage, including the curtesy interest of the husband therein, subject to its satisfaction by judgment and execution, thereon. There is a union of interests in an estate of inheritance, in no sense contingent or expectant when viewed as a single title held in unity by the joint judgment debtors, which elemental justice renders answerable as a unity for the judgment debt. This does not offend against the statutory policy.

Pointing out that, "if any question is well settled by authority, it is, that the interest which the husband acquires in the wife's inheritance is subject to judgment and execu-

tion against the husband," Chancellor Williamson said in the early case of *Nicholls* v. *O'Neill, supra:* "The husband is not solely seized, but is seized jointly with the wife. The technical phraseology of the common law is, 'that husband and wife are jointly seized in right of the wife.' This estate the husband may dispose of without the consent of the wife. By a deed of bargain and sale, he may create an estate of freehold in the wife's inheritance without her consent or her uniting in the conveyance." It is not a difference of substance that the husband now has, during coverture, no vested estate in possession in his wife's lands. Whether the right of curtesy consummate be viewed as a vested estate in remainder, or inchoate and therefore contingent in essence, the husband and wife are jointly seized of the fee, and are invested by the law with capacity to make a joint conveyance of the lands. And, by the same token, it is subject to execution in the circumstances here presented.

The general rule is that contingent interests in lands, which are "real and substantial," are subject to execution. 23 *C. J.* 335. The primary reason for their exemption from execution is that they are in nature too speculative to permit of a fair appraisement and sale. *Cowan* v. *Storms, supra.* But that difficulty is not present in a case such as this. No purpose would be served by saving the curtesy interest of the husband in these circumstances. The joint interest will obviously yield more than the sale of either separately. And the law deems it unjust that a person should withhold from his creditors property which can fairly be sold or applied to the satisfaction of his debts. 21 *Am. Jur.* 207. In such situation, it would be a plain disservice to the creditor, without any consideration of public policy to support it, to put the husband's curtesy interest beyond the reach of execution. It would result in an outstanding interest to the substantial impairment of the lands as an asset for the satisfaction of the joint debt, if, indeed, it did not for all practical purposes render it immune from execution in the individual case, and thus in part subvert the essential purposes of the Married Woman's Act. In the circumstances there would not be the introduction of "an utter stranger" to the title, or any other

interference with the wife's "sole and separate use" of her real estate as secured by the statute; rather, it would serve its central policy of investing the married woman with freedom of contract and dominion over her property. If a contingent interest is grantable, and the cited statute so provides, so also should it be made to respond in such situation for the liquidation of the joint obligation of the husband and wife, since the reason for the exemption of contingent interests from a sale *in invitum, i. e.,* inability to secure a fair appraisement and sale, does not obtain here. In general, the liability of property for the owners' debts, except as made the subject of express legal exemptions, "is as unlimited as the power of disposition, which is an inseparable incident of ownership, when there is no legal disability, for the incurring of indebtedness for the payment of which the property may be taken is but a mode of disposition by the owner." *Stewart* v. *Wheeling and L. E. Railway Co.,* 53 *Ohio St.* 151; 41 *N. E. Rep.* 247. And it has been held, as regards the common law freehold estate *jure uxoris,* that the husband and wife "together have the whole estate, and therefore in law they are both considered as seized in fee, and must so state their title in pleading." *Melvin* v. *Proprietors of Locks, &c.,* 16 *Pick.* 161. See, also, *Breeding* v. *Davis, supra.* It is not a differentiating factor that such estate *jure uxoris* is a freehold estate in possession. The unity of interests in the fee is the significant circumstance in this behalf. As said, there is no reason of public policy or otherwise why such exemption should be had.

These considerations are in consonance with our general public policy It is the prevalent rule that, during coverture, an estate in lands by the entirety is not reachable by execution upon a judgment against either spouse, since they are seized of the whole, and not of a moiety or share, for each is seized *per tout et non per my,* and, in contemplation of law, there is but one estate held by one person. Yet it is the settled rule in this state that each has an alienable estate subject also to execution. *Zubler* v. *Porter,* 98 *N. J. L.* 444; *Taub* v. *Shampanier,* 95 *Id.* 349; *Aubry* v. *Schneider,* 69 *N. J. Eq.* 629; *affirmed,* 70 *Id.* 809; *Wood* v. *Warner,* 15 *Id.* 81; *McDermott* v. *French,* 15 *Id.* 78; *Den* v. *Hardenbergh,* 10 *N. J. L.* 42; 23 *C. J.* 338.

And there is no factual issue respecting the other asserted incumbrances. The recognizance had, following the passing of title, become barred by the lapse of time fixed by the statute of limitations. The existence of the attachment, and the need for its extinguishment to clear the title, were brought to appellants' attention before the title passed, and the attachment was noted as an exception on the abstract of title.

The judgment is accordingly affirmed.

CASE, J. (Dissenting in part). At common law curtesy was divided into "initiate" and "consummate." Curtesy initiate began immediately upon the birth of lawful issue of the marriage, born alive and capable of inheriting the wife's estate; whereupon the husband acquired an independent life estate in his own right in all the estates of inheritance of the wife in which she had been or might thereafter become seized during coverture. Curtesy consummate was of the same character and with the same incidents except for an additional requisite, namely, the death of the wife. The husband's rights by way of curtesy initiate were, it seems, subject to execution and sale at common law. *Gay* v. *Gay* (*Ill.*), 13 *N. E. Rep.* 813; *Jacobs* v. *Rice*, 33 *Ill.* 370; *Canby's Lessee* v. *Porter*, 12 *Ohio* 79; *Cooley's Blackstone* (*2d ed.*) 412, *footnote* 14.

Our Married Women's Act of March 25th, 1852 (*Nix. Dig.* 503), was inconsistent with the continued existence of curtesy initiate. *Porch* v. *Fries* (*Chancery*), 3 *C. E. Gr.* 204. There was some uncertainty expressed in Chancery as to whether thereafter the interest of a husband in his wife's lands following the birth of issue but preceding the death of the wife should or should not, be called an estate, but this court has clearly stated that the interest constituted a *right* in the husband and has denominated that right an "inchoate right of curtesy." *Trade Insurance Co.* v. *Barracliff* (*Court of Errors and Appeals*), 45 *N. J. L.* 543, 550; *Bucci* v. *Popovich*, 93 *N. J. Eq.* 121 (at *p.* 128), affirmed on the opinion below, *Id.* 511. And the rather loose references to the right as an "estate" were explained and resolved in the Bucci opinion by the following reference to an illustrative use of that expression by Vice-Chancellor Stevens:

"I take it that he was dealing solely with the question involved in the case before him and with similar questions arising between husband and wife, as to their respective rights and interests in the wife's real estate, and that he did not intend to say that upon the birth of issue, the husband becomes seized of such a vested estate in remainder in his wife's lands as a judgment creditor could seize and sell under execution, but that what he decided was that the husband's right of curtesy was a vested right of which he could not be divested by any act of the wife or by the involuntary sale of her land under execution."

Further, this court, speaking through Chief Justice Gummere in *Hannan* v. *Wilson,* 100 *N. J. Eq.* 528, specifically and at length approved the holding in *Porch* v. *Fries, supra,* to the effect that the husband has, during the wife's life, no interest or estate in lands received by the wife through purchase, gift, grant, devise, descent or in any other manner, and that she can sell and convey them with his assent, viz., by his joining in the *execution* of the conveyance, not in the grant itself; and that if she so sells and conveys them, she conveys them, as she holds them, free from any interest or estate of her husband. The opinion in this court adds—"he (the husband) has no present interest in the land which could be made the subject of a grant." It has further been settled by this court that the inchoate right of curtesy of a husband in his wife's separate real estate is personal to him and not subject to the claims of his creditors, *Bucci* v. *Popovich, supra,* and that the husband can neither be deprived of that right by his wife's own conveyance nor be divested of it by involuntary sale of his wife's lands under judicial proceedings, *Mullen* v. *Mullen,* 98 *Id.* 90, 92; affirmed on the opinion below, *Id.* 728 (the right survived partition and attached to the proceeds).

Such changes, if any, as were effected in the law by chapter 68, *Pamph. L.* 1927, and chapter 209, *Pamph. L.* 1928, now *R. S.* 3:37-1 and 3:37-2, are not relevant. The wife became seized in 1919, and the extent of the husband's inchoate right is governed by the law as it then was. *Schmidt* v. *Gardner,* 120 *N. J. Eq.* 235.

This court has further held that "curtesy" is a legal inci-

dent of the wife's estate of inheritance, and is a right favored in the law. A husband will not be excluded from rights in the property of the wife springing from the marital relation, except by words that leave no doubt of the intention to do so." *Cushing* v. *Blake* (*Court of Errors and Appeals*), 30 *N. J. Eq.* 689, 697. As curtesy concerns real estate it seems to follow that if it is subject to levy under execution this liability must come from statute and that the statutory provision must be at least fairly clear. I have examined the Judgments Act, *Comp. Stat.* 1910, *p.* 2955, the Executions Act, *Comp. Stat.* 1910, *p.* 2243, and the Sales of Land Act, *Comp. Stat.* 1910, *p.* 4675, and am of the opinion that these statutes do not clearly authorize a sale by virtue of execution under the circumstances of the instant case.

So we have it in the presently established law that a husband, following the birth of issue but preceding the death of his wife, has an inchoate right of curtesy in all the estates of inheritance of the wife in which she has been or may hereafter become seized during coverture; that the right is not an interest or an estate as those terms are used in the law of real property, that the right is personal to the husband and is not subject to the claims of his creditors; and that he may not be divested of it by the involuntary sale of his wife's lands under judicial proceedings; and that while the wife may convey out the lands freed of that inchoate right if the husband joins in the execution of the conveyance, still it is only in the execution that he joins, not in the grant, for he has no present interest which could be made the subject of a grant.

Our courts have never held, or, so far as my study goes, made the statement, in so many words, that an inchoate right of curtesy may not be sold under an execution issued upon a judgment entered jointly against husband and wife; but I conclude that the expressions just reviewed lead inevitably to that further negation.

I believe the law to be that an inchoate right of curtesy is not subject to levy and sale even under a judgment against husband and wife jointly. The defendant believed otherwise, but I think that the divergence of views will not sustain the

charge that he did not, in forming his opinion, exercise the reasonable knowledge and skill ordinarily possessed by members of the bar. Negligence in the instant case may not be grounded in, or proved by, the mere fact of a mistaken view of the law of the case. I therefore join in the finding that,

The judgment below should be affirmed.

I am authorized to say that Mr. Justices Parker and Donges and Judges Dear and Wells concur in the foregoing dissenting opinion.

*For affirmance*—The Chancellor, Chief Justice, Parker, Case, Bodine, Donges, Heher, Perskie, Porter, Dear, Wells, WolfsKeil, Rafferty, Hague, JJ. 14.

*For reversal*—None.