Ruth McDOUGAL, Plaintiff-Appellant,

v.

Oral J. McDOUGAL, Defendant-Respondent,

Mississippl Valley Trust Company, a
corporation, Garnishee.

No. 7286.

Springfield Court of Appeals.

Missouri.

May 2, 1955.

Motion for Rehearing or to Transfer
Overruled June 6, 1955.

Phillips & Phillips, Poplar Bluff, for plaintiff-appellant.

Ted M. Henson, Poplar Bluff, Bradley & Noble, Kennett, for defendant-respondent.

STONE, Judge.

Plaintiff, Ruth McDougal, appeals from an order quashing an execution and garnishment issued on a judgment entered in the Circuit Court of Butler County, Missouri, which "adopted and made the judgment of this court" two prior judgments entered in divorce actions in the Chancery Court of Clay County, Arkansas. In Case No. 3051 in said Chancery Court (hereinafter referred to as the first Arkansas case), the trial chancellor on November 28, 1942, dismissed the complaint of Oral J. McDougal and, on the cross-bill of Ruth McDougal, granted a decree of divorce to the wife, gave her care and custody of two minor children, directed the husband to pay attorneys' fees and $100 per month "for the support of herself and said children," and adjudged that the wife "is entitled to and is * * * the owner of one-third of (Oral's) personal property absolutely and wheresoever situated including the personal property bequeathed to (Oral) under * * * the will of W. B. A. Barnes, de-

ceased," who died in Butler County, Missouri, on March 17, 1941. Upon appeal, the Supreme Court of Arkansas found that Oral "had been guilty of conduct which fully sustained the .* * * decree of divorce to the wife" but, "because of her condonation of her husband's conduct," that portion of the decree granting a divorce to Ruth and awarding her one-third of Oral's personal property was reversed. However, Oral was "directed to contribute $100 per month to the support of his wife and children." McDougal v. McDougal, 205 Ark. 945, 171 S.W.2d 942, 943. In Case No. 4049 (hereinafter referred to as the second Arkansas case), a decree of divorce was granted on June 7, 1945, to Oral on the pleaded statutory ground, *not* alleged in the first Arkansas case, of separation for three consecutive years without cohabitation. Section 34–1202, Arkansas Statutes 1947 (amended by Acts 1953, No. 161, in particulars not here material).[1] The judgment in the second Arkansas case (hereinafter referred to as the second Arkansas judgment) further provided that "*property rights have been settled by the parties and under said property settlement agreement* * Ruth McDougal is hereby vested with an undivided one-third interest in the personal property of the plaintiff (Oral) absolutely, and one-third of the real estate of which he is seized for her life." [2]

By the judgment entered in the instant Missouri case on December 29, 1945 (hereinafter referred to as the Missouri judgment), from which no appeal was tak-

1. Under the cited statute, either spouse is entitled to a decree of divorce, regardless of fault on his or her part, if both spouses have lived separate and apart for three consecutive years without cohabitation. Brooks v. Brooks, 201 Ark. 14, 143 S.W.2d 1098, 1100(1, 2); Young v. Young, 207 Ark. 36, 178 S.W.2d 994, 152 A.L.R. 327; Larsen v. Larsen, 207 Ark. 543, 181 S.W.2d 683; Warren v. Warren, 214 Ark. 379, 216 S.W.2d 398, 399 (2).

2. Although in Missouri a wife may have permanent alimony only as an incident to a decree of divorce in her favor [Section 452.090 RSMo 1949, V.A.M.S.;

Smith v. Smith, 350 Mo. 104, 164 S.W. 2d 921, 923(4); Rhoads v. Rhoads, 342 Mo. 934, 119 S.W.2d 247, 251(6); McIntire v. McIntire, 80 Mo. 470, 472(1); Willis v. Willis, Mo.App., 274 S.W.2d 621, 629(19)], the Arkansas rule is that permanent alimony may, in the discretion of the trial chancellor, be allowed to a wife against whom a decree of divorce is granted. Section 34–1211, Arkansas Statutes 1947, as amended Acts 1951, No. 56; Grytbak v. Grytbak, 216 Ark. 674, 227 S.W.2d 633, 635(2); Clarke v. Clarke, 201 Ark. 10, 143 S.W.2d 540(2); Clyburn v. Clyburn, 175 Ark. 330, 299 S.W. 38, 39(3); Pryor v. Pryor, 88 Ark. 302, 114 S.W. 700, 702(1).

en, the judgments in both Arkansas cases were "adopted and made the judgment of this (Circuit) Court (of Butler County) as fully as if originally founded herein." By execution and garnishment in the Missouri case during April, 1951, plaintiff (Ruth) sought to reach and obtain one-third of Oral's "proportionate interest" of ⅗₇ in the residuary trust estate of W. B. A. Barnes, deceased, held by Mississippi Valley Trust Company of St. Louis, Missouri, as trustee. Following a hearing on defendant's (Oral's) motion to quash the writ of garnishment, the Circuit Court of Butler County found that the second Arkansas judgment, "as to the personal property of Oral J. McDougal, is extinct and invalid for the reason that said judgment sought to impress a lien of a ⅓ interest upon the personal property of the said Oral J. McDougal, and if valid, could only be as against such property in which he had an absolute and vested interest," held that "Oral J. McDougal did not have a vested interest in said bequest at the time of the Arkansas decree," and quashed the execution and garnishment. Such order being a complete and final disposition of the subject-matter of defendant's motion to quash, plaintiff's appeal therefrom properly lies. Section 512.020 RSMo 1949, V.A.M.S.; Flynn v. Janssen, Mo., 266 S.W.2d 666, 671(8); Slagel v. Murdock, 65 Mo. 522, 524(1); Ex parte James, 59 Mo. 280, 284(3); Gale v. Michie, 47 Mo. 326, 327(1).

In the last will and testament of W. B. A. Barnes (hereinafter referred to as the Barnes will), the testator made specific cash bequests to five individual legatees and to cemetery trustees in the second to seventh paragraphs, inclusive, provided in the eighth paragraph for the support of a sister, and then made other specific cash bequests to thirteen nephews, nieces, great-nephews and great-nieces in the ninth to seventeenth paragraphs, inclusive, "to be paid * * * as hereinafter provided" in the eighteenth paragraph, i.e., "in annual payments of one-tenth (⅒) of the principal amounts bequeathed, together with the income earned by the principal during the year next preceding such payments." In

the nineteenth paragraph of the Barnes will, the testator provided that "if any of the beneficiaries named in * * * paragraphs * * * nine to seventeen, both inclusive, should depart this life before my demise, or before the amounts bequeathed to him, her or them, shall have been fully paid, then I direct that said sum or sums or the residue thereof, shall pass to his, her or their heirs in accordance with the laws of descent and distribution of the state of which such beneficiary or beneficiaries shall be a resident at the time of his, her of their death."

After appointing Mississippi Valley Trust Company (hereinafter referred to as Mississippi Valley) as "executor and trustee," the testator in the twenty-first paragraph gave and bequeathed the residue of his estate to Mississippi Valley "to be handled and administered by it," stated that, upon final settlement by and discharge of Mississippi Valley as executor, Mississippi Valley thereafter should "hold all of said estate not theretofore disposed of and administer the same as trustee," and directed that "at the end of ten years after my demise * * * the rest, residue and remainder of my estate be divided among the beneficiaries named in * * * paragraphs * * * ninth to seventeenth, both inclusive, in proportion to the amounts bequeathed to them, or to their heirs as provided by * * * paragraph nineteen." In a codicil to the Barnes will, the testator made specific cash bequests of $3,000 each to three great-nephews, of whom Oral was one, payable "in annual payments of one-tenth (⅒) of the principal amounts bequeathed, together with the income earned * * *, exactly as provided in Paragraphs Eighteen and Nineteen of my * * * will," and also directed that "said beneficiaries * * * shall share in the residue of the estate exactly as provided for beneficiaries and bequests under Paragraphs Nine to Seventeen, both inclusive, as set out in Paragraph Twenty-one of my * * * will." The cash bequests to beneficiaries named in the ninth to seventeenth paragraphs of the Barnes will and in the codicil thereto aggregated $57,000 so Oral, to whom $3,000

was bequeathed, had an undivided 3/7 interest in the residuary estate. Ruth seeks one-third of that 3/7 interest.

The primary issue presented by Oral's motion to quash the writ of garnishment directed to Mississippi Valley was whether his 3/7 interest in the residuary trust estate was vested or contingent, when the second Arkansas judgment was entered on June 7, 1945, giving Ruth "an undivided one-third interest in the personal property" of Oral. An interest or estate is vested when there is an immediate right of present enjoyment, or a present, fixed right of future enjoyment.[3] *It is the uncertainty of the right of enjoyment, and not the uncertainty of actual enjoyment, that renders an interest contingent,[4] and an interest does not become contingent merely because it is uncertain whether the beneficiary will come into actual possession and enjoyment thereof.[5]* But, although these broad general principles are easy of statement, their proper application to the facts of a given case is frequently perplexing.[6] It is a simple matter to reiterate that, in determining whether an interest is vested or contingent, the testator's intention, as gathered from the four corners of his will, should be followed unless it contravenes public policy or some established rule of law,[7] but again numerous cases vividly portray the practical difficulties encountered in judicial determination of such intention. So it is that, in attempting to ascertain the testator's intention in the myriad of instances in which there has been no clear, definite and specific statement of intention, the courts have considered many factors and have evolved numerous auxiliary rules of testamentary construction, in the application of which such diverse results have been reached that some rules seem to have been contrived, as one annotator facetiously expressed it, "like the old negro's coon trap, to 'ketch 'em both a-comin' and a-gwine.'" Annotation, L.R.A.1915C, 1012, 1057.[8]

3. Trautz v. Lemp, 329 Mo. 580, 46 S.W. 2d 135, 142(12); Tindall v. Tindall, 167 Mo. 218, 66 S.W. 1092, 1094; 69 C.J., Wills, Sec. 1669, p. 590; Page on Wills (3rd Ed.), Vol. 3, Sec. 1257, p. 679.

4. Tindall v. Tindall, supra, 66 S.W. loc. cit. 1094; Rodney v. Landeau, 104 Mo. 251, 257(2), 15 S.W. 962, 963–964; Chew v. Keller, 100 Mo. 362, 367–368(1), 13 S.W. 395, 396; Hopper v. Gurtman, 126 N.J.L. 263, 18 A.2d 245, 250(8), 133 A.L.R. 621, 628(12); 69 C.J., Wills, Sec. 1670, pp. 591–592.

5. 69 C.J., Wills, Sec. 1670, p. 591; 31 C.J.S., Estates, § 69, pp. 88, 90; Page on Wills (3rd Ed.), Vol. 3, Sec. 1274, pp. 730, 732. See and compare Harlow v. Benning, 357 Mo. 266, 207 S.W.2d 471, 473(1); Garrett v. Damron, Mo., 110 S.W.2d 1112; Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947, 951; Union Nat. Bank in Kansas City v. Bunker, 232 Mo.App. 1062, 114 S.W.2d 193, 196 (3).

6. "Thousands of that learned (legal) profession have essayed the task of drawing a clear, definite, and always recognizable distinction between remainders vested and remainders contingent, but unfortunately, instead of producing what the nonprofessional person would naturally expect, a well-beaten path which the wayfaring court, though less than wise, may follow and be safe, a map of the routes so laid out reveals a labyrinth compared with which a plat of interlacing lines connecting all the stars in the firmament would be a model of simplicity. It may also be admitted that where the courts themselves have sought to blaze their way through a jungle of precedents and mark each turn and twist in the route by guideposts adorned with Latin quotations which everybody feels in duty bound to admire and nobody tries to read, they have, as a rule, found much difficulty in leaving a clear highway which others can follow with any assurance of finding their way home again." Dowd v. Scally, Iowa, 174 N.W. 938, 939, affirmed on rehearing, Iowa, 184 N.W. 340.

7. Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 23(2); St. Louis Union Trust Co. v. Herf, Mo., 235 S.W.2d 241, 247 (4); Mississippi Valley Trust Co. v. Palms, 360 Mo. 610, 229 S.W.2d 675, 677–678(1); Kingston v. St. Louis Union Trust Co., 348 Mo. 448, 154 S.W.2d 39, 41(1); Page on Wills (3rd Ed.), Vol. 3, Sec. 1259, pp. 689–690.

8. For excellent discussions of such factors and rules, see the comprehensive annotations in L.R.A.1918E, 1097 and L.R.A. 1915C, 1012. Consult also annotations in 30 A.L.R.2d 127 and 71 A.L.R. 1051.

It has been well said that the question as to whether an interest is vested or contingent is one of substance and not of form [annotation, 1 L.R.A. 551, 553] and "is not to be arbitrarily determined solely and alone by hard and fast rules" [Riley v. Kirk, 213 Mo.App. 381, 253 S.W. 50, 52(4)]; and that, by reason of the infinite variety of purposes and modes of expression in wills, precedents in will cases are of little value except insofar as they may formulate and enunciate rules to be followed in construction of all wills.[9] But, permeating and pervading the body of judicial writings treating of vested and contingent interests is the basic principle that the law favors the vesting of testamentary gifts or legacies at the earliest possible date, unless a contrary intention is manifested clearly.[10] Where there is doubt as to the nature of the legacy or interest, it will be construed as vested rather than contingent,[11] " ' "because that usually better conforms to the testator's meaning" ' " [St. Louis Union Trust Co. v. Herf, Mo., 235 S.W.2d 241, 247(5)] and "testators usually have in mind the actual enjoyment rather than the technical ownership of their property" [Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947, 950; Union Nat. Bank in Kansas City v. Bunker, 232 Mo.App.

1062, 114 S.W.2d 193, 198]; In fact, it has been said pointedly that "the universal rule is * * * that, wherever it is possible, an instrument will be so construed as not creating an estate subject to a condition, particularly a condition precedent" [Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 197 S.W. 261, 265(4)], and that, " 'in the absence of anything in the will showing, either expressly or by implication, that testator intends that the title to his bounty is to be postponed, it is conclusively presumed that his gift is to vest at his death' " [Grannemann v. Grannemann, Mo., 210 S.W.2d 105, 107].

In the instant case, the Barnes will and codicil plainly directed payment of fixed proportions of the residuary estate to named beneficiaries on a definite date.[12] At the testator's death, Oral's right to receive ⅗₇ of the residuary estate 10 years later became a present, fixed right of future enjoyment of such interest. That Oral's *actual* enjoyment of his legacy depended upon his survival to March 17, 1951, the end of the trust period, did not render his interest contingent.[13] If he had died in the meantime his interest would *not* have reverted to *testator's* heirs but would have passed to Oral's heirs "in accordance with the laws of descent and distribution." [14]

9. McElroy v. Fluker, Mo., 265 S.W.2d 361, 363(3); Obetz v. Boatmen's Nat. Bank of St. Louis, 361 Mo. 221, 234 S.W. 2d 618, 623; Shelton v. Shelton, 348 Mo. 820, 155 S.W.2d 187(1); Chew v. Keller, supra, 13 S.W. loc. cit. 397; Bredell v. Collier, 40 Mo. 287, 321; In re Schick's Estate, 169 Pa.Super. 226, 82 A.2d 262, 266, 30 A.L.R.2d 119, 126(11).

10. Miller v. Kriner, Mo., 247 S.W.2d 757, 761(2); Lang v. Taussig, Mo., 180 S.W. 2d 698, 701(6); Thompson v. Thompson, Mo., 175 S.W.2d 885, 888(5); Kingston v. St. Louis Union Trust Co., supra, 154 S.W.2d loc. cit. 41(2); Laird v. Lust, Mo., 98 S.W.2d 768, 769(1); Trautz v. Lemp, supra, 46 S.W.2d loc. cit. 142(11); Palmer v. French, 326 Mo. 710, 32 S.W. 2d 591, 595(8); Bredell v. Collier, supra, 40 Mo. loc. cit. 321; 69 C.J., Wills, Sec. 1681, pp. 597–602.

11. Chew v. Keller, supra, 13 S.W. loc. cit. 396; 57 Am.Jur., Wills, Sec. 1218, p.

803; Page on Wills (3rd Ed.), Vol. 3, Sec. 1259, pp. 689, 693–694; Ibid., Sec. 1271, pp. 726–727.

12. The instant situation is not to be confused with cases where, as was pointed out in Gardner v. Vanlandingham, supra, 69 S.W.2d loc. cit. 951, "particular language under consideration has been held to indicate an intention that *the membership of the class*, to whom property was ultimately to go, should be determined at the death of the life tenant rather than at the death of the testator."

13. Indefeasibility is not an essential characteristic of a vested interest. 69 C.J., Wills, Sec. 1671, p. 593. See also authorities cited in footnote 5, supra.

14. In Gardner v. Vanlandingham, supra, 69 S.W.2d loc. cit. 951, a provision that " 'the share they (my heirs) would have *received* if living shall descend to their issue' " was believed to have implied "a

Testamentary directions, such as those in the Barnes will, pertaining to division and devolution of an estate may and usually do relate to enjoyment and not to vesting of title. Thompson v. Thompson, Mo., 175 S.W.2d 885, 888(7.); Gardner v. Vanlandingham, supra, 69 S.W.2d loc.cit. 951(9). Since critical analysis of the Barnes will and codicil reveals "nothing to show any clear expression of an intention" that the interests of the residuary legatees should not vest at the testator's death [Legg v. Wagner, Mo., 155 S.W.2d 146, 148], we are constrained to conclude that, from and after the testator's death and thus when the second Arkansas judgment was entered, Oral had a *vested* %₇ interest in the Barnes residuary estate, subject to defeasance by a condition subsequent, namely, his death before the end of the 10-year trust period.[15] The Barnes trust estate consisting of personal property, Oral's interest therein was personal property[16] and was within the scope and contemplation of the Arkansas judgment giving Ruth "an undivided one-third interest in the personal property" of Oral.

Barnes residuary estate when the second Arkansas judgment was rendered, that judgment purported to operate directly on the title to property in Missouri and thus was void, and that, the second Arkansas judgment having been void, the Missouri judgment was void. Of course, an execution based on a void judgment is a nullity and should be quashed on motion. State ex rel. and to Use of Bair v. Producers Gravel Co., 341 Mo. 1106, 111 S.W.2d 521, 523(8); Lohmann v. Lohmann, Mo.App., 246 S.W.2d 368, 371(5). But assuming, *without however so deciding*, that Oral had the legal right to challenge the validity of *the second Arkansas judgment* by motion to quash the writ of garnishment issued on *the Missouri judgment* [17] (notwithstanding the fact that, in his answer in the Missouri case, he had not attacked said Arkansas judgment [18] but, on the contrary, had averred that "*the rights of the parties were settled*" thereby), was the second Arkansas judgment void?

 Although not stated so plainly in his brief, Oral's theory *now* seems to be that, even if he had a vested interest in the

 The tenor of that judgment indicates that, insofar as it delineated the property rights of the respective parties, it was entered by consent [Gerhart v. Brady, 72 Mo.App. 138 loc. cit. 141], but "a judgment pronounced by consent of parties or

vested interest, the enjoyment of which was yet to be *received*." For other cases where interests under wills containing so-called substitutional provisions have been held vested, see Grannemann v. Grannemann, Mo., 210 S.W.2d 105; Garrett v. Damron, supra; Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 197 S.W. 261; Chew v. Keller, supra. See also annotation, 109 A.L.R. 5, 7–8; annotation, L.R.A.1918E, 1097, 1129, 1131; annotation, L.R.A.1915C, 1012, 1062–1063.

15. Deacon v. St. Louis Union Trust Co., supra, 197 S.W. loc. cit. 266(7); Trautz v. Lemp, supra, 46 S.W.2d loc cit. 142; Gardner v. Vanlandingham, supra, 69 S.W.2d loc. cit. 951–952(10); Page on Wills (3rd Ed.), Vol. 3, Sec. 1266, p. 708; Ibid., Sec. 1272, p. 727; annotation, 131 A.L.R. 712; Littleton's Tenures in French and English (1671), Chap. 5, p. 185.

16. Restatement of Law of Trusts, Sec. 130 (a), p. 331. The term "personal prop-

erty" includes all property which is not real property. Ibid., Sec. 130, Comment b, p. 331; 73 C.J.S., Property, § 8 a, p. 170.

17. "A judgment creates a new right in the judgment plaintiff and imposes a new duty on the judgment defendant, *independent of the cause of action alleged in the suit in which the judgment was given. Suit on a judgment is a suit on this new right, not on the old cause of action; and it is immaterial whether a cause of action did or did not exist before judgment*." Restatement of Conflict of Laws, Section 431, Comment a, p. 514.

18. "'(T)he want of jurisdiction on the part of a court of general powers to render judgment must be pleaded by the defendant in an action upon the judgment, unless the defect * * * affirmatively appears from the record.'" Irwin v. Rawling, Mo.App., 141 S.W.2d 223, 228(6).

upon stipulation should be accorded the same force as other judgments" [Short v. Taylor, 137 Mo. 517, 38 S.W. 952, 954; Casler v. Chase, 160 Mo. 418, 60 S.W. 1040, 1041(4)]. In Missouri, specific personal property may be decreed to the wife in a divorce suit pursuant to agreement of the parties [Crews v. Mooney, 74 Mo. 26; Landau v. Landau, Mo.App., 71 S.W.2d 49, 50–51(2)] but not otherwise [State ex rel. George v. Mitchell, Mo.App., 230 S.W.2d 116, 121(10), and cases there cited]. And, a Missouri court has authority in a divorce case to enter a judgment by consent approving a property settlement or agreement [Crews v. Mooney, supra; Bishop v. Bishop, Mo.App., 162 S.W.2d 332, 337(11)] which, after such approval, should be viewed as having been found to be fair, valid and binding.[19] Arkansas cases indicate that the same practice with respect to property settlements is followed in that jurisdiction [Bachus v. Bachus, 216 Ark. 802, 227 S.W.2d 439; McCue v. McCue, 210 Ark. 826, 197 S.W.2d 938; Pryor v. Pryor, 88 Ark. 302, 114 S.W. 700] and there has been no suggestion to the contrary by Oral's counsel.

At the time of entry of the second Arkansas judgment, *legal* title to the Barnes trust property was in Mississippi Valley, as trustee, but Oral had an *equitable beneficial interest* which had vested at the testator's death subject to defeasance. Trautz v. Lemp, supra, 46 S.W.2d loc. cit. 142(15). This equitable beneficial interest was intangible personal property [Restatement of Conflict of Laws, Sec. 46, Comment c, pp. 76–77] which, under the ancient doctrine of mobilia sequuntur personam, followed Oral's person. "The situs of intangible personal property, by fiction of law, is always at the domicile of the owner." State of California ex rel. Houser v. St. Louis Union Trust Co., Mo.App., 260 S.W.2d 821, 826(11); certiorari granted

State of California ex rel. Brown v. St. Louis Union Trust Co., 348 U.S. 808, 75 S.Ct. 22, 99 L.Ed. ——, but dismissed 348 U.S. 932, 75 S.Ct. 354, 99 L.Ed. ——.[20] And, "(j)urisdiction over the owner of an intangible thing will, in most cases, enable a state to affect the intangible thing as it desires to do." Restatement of Conflict of Laws, Sec. 51, Comment b, p. 83. Insofar as the second Arkansas judgment affected the aforesaid equitable beneficial interest of Oral, who resided in Clay County, Arkansas, the second Arkansas judgment was *not* void as operating directly upon title to property without the jurisdiction of the Arkansas court. Cf. Phillips v. Phillips, Ark., 272 S.W.2d 433; contrast Tolley v. Tolley, 210 Ark. 144, 194 S.W.2d 687.

Nor can we find, as the trial court did, that the second Arkansas judgment "sought to impress a lien" upon Oral's personal property. A judgment is to be construed like a written instrument, the determinative factor being the intention of the court as gathered from the entire judgment. 30 Am.Jur., Judgments, Sec. 31, p. 834. It should be construed "in light of the situation of the court, what was before it, and the accompanying circumstances" and "a construction adopted or acquiesced in by the parties will not be changed without strong reason." 49 C.J.S., Judgments, § 436 a, pp. 862, 867. Where it is reasonably possible to do so, such construction will be adopted as will give force and effect to the judgment, make it serviceable instead of useless, and support rather than destroy it. Furthermore, in respect to a judgment rendered by a court of general jurisdiction of a sister state, it is presumed, absent any showing to the contrary, not only that the court had jurisdiction both of the parties and of the subject matter [Toler v. Coover, 335 Mo. 113, 71 S.W.2d 1067, 1069(5); O'Connell v. Smith, Mo.App., 131 S.W.2d 730,

---

19. Luedde v. Luedde, 240 Mo.App. 69, 211 S.W.2d 513, 517(4); Poor v. Poor, 237 Mo.App. 744, 167 S.W.2d 471, 474(4). See also Jenkins v. Jenkins, Mo.App., 257 S.W.2d 250, 254; Davis v. Davis, Mo. App., 196 S.W.2d 447, 452.

20. Consult also Minor v. Cardwell, 37 Mo. 350, 356; 15 C.J.S., Conflict of Laws, § 18 c, p. 928; 84 C.J.S., Taxation, § 116, p. 229; 11 Am.Jur., Conflict of Laws, Sec. 65, p. 352.

732(3); Hicks v. La Plant, 236 Mo.App. 299, 151 S.W.2d 104, 106(1)] but also that the court "followed its laws and entered a valid judgment in accordance with the issue made in that case" [Toler v. Coover, supra, 71 S.W.2d loc.cit. 1070–1071(10)]. A party asserting the invalidity of such judgment has the burden of overcoming the presumption of validity, unless the proceedings show on their face that the judgment is not entitled to that presumption. Toler v. Coover, supra, 71 S.W.2d loc. cit. 1069(6). Certainly the second Arkansas judgment did not, *by its terms*, "impress a lien"; and, with the foregoing principles in mind, the judgment carries no such implication to us.

 Oral's final contention that the ruling of the Supreme Court of Arkansas in the first Arkansas case [McDougal v. McDougal, 205 Ark. 945, 171 S.W.2d 942] "is *res judicata* to (Ruth's) claim of ownership or interest in the bequest in the Barnes will" was a matter which, even if it were meritorious (a question which we need not determine), constituted an affirmative defense to be asserted by answer in the Missouri case. Section 509.090 RSMo1949, V.A.M.S. A motion to quash an execution for alleged invalidity of the judgment on which it is based constitutes a collateral attack on the judgment [Gary Realty Co. v. Swinney, 317 Mo. 687, 297 S.W. 43, 44(1)], which does not reach alleged errors or irregularities prior to judgment [Vorhauer v. Sweeney, Mo.App., 217 S.W.2d 985, 987(5); Burkard v. Hahne, Mo.App., 17 S.W.2d 636, 639(3); Hammett v. Hatton, 189 Mo.App. 567, 176 S.W. 1078; Horstmeyer v. Connors, 51 Mo.App. 394, 396–397] and will lie only where the record affirmatively discloses that the judgment is void [Gerhart v. Brady, 72 Mo.App. 138, 140–141; Merrick v. Merrick, 5 Mo.App. 123, 126–127]. A motion to quash cannot be substituted for an appeal. Baumgartner v. Cloud, Mo. App., 218 S.W.2d 793, 794(2); Sappington v. Lenz, 53 Mo.App. 44, 52(7). Oral's plea of res judicata is not available to him on his motion to quash.

It is the judgment of this court that the order and judgment of the circuit court

quashing execution and garnishment on the Missouri judgment be set aside, and that the cause be remanded with directions to enter an order overruling Oral's motion to quash and for such further proceedings as are not inconsistent with the views expressed herein.

McDOWELL, P. J., and RUARK, J., concur.